No. 49,304

STATE OF KANSAS, *Appellee,* v. JAMES C. STUART, *Appellant,* and DARYL B. JONES, *Appellant.*

(575 P.2d 559)

Opinion filed February 25, 1978.

*John E. Pyles,* of Wichita, argued the cause and was on the brief for appellant James C. Stuart.

*John P. Woolf,* of Martin, Pringle, Schell & Fair, of Wichita, argued the cause and was on the brief for appellant Daryl B. Jones.

*J. Larry Linn,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Vern Miller,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: This is an appeal from a conviction of aggravated robbery (K.S.A. 21-3427). Defendants, James C. Stuart and Daryl B. Jones, raise common issues on appeal as well as points which will be considered separately.

At approximately 9:30 p.m. on March 2, 1977, a Wichita service station was robbed. The station attendant, Joseph W. Briggs, had just returned from a restroom when he looked up and saw a man pointing a gun at him. Directly behind the first man was a second individual who did not appear to be armed. The first man advanced toward Briggs, grabbed him by the jacket, jabbed the gun into the attendant's ribs, and told him to get the money. Briggs went to the desk where the station receipts were kept and unlocked the drawer. As he started to open the drawer the man holding the gun pushed him out of the way, opened the drawer and emptied the cash box. During this time the second man kept a lookout. The robbers then demanded to know where the rest of the money was kept. Briggs explained that he had earlier put the rest of the money in a safe and he didn't have a key to open it. Both robbers attempted to shake the safe to see if it would open. Finally, the unarmed male stated, "Let's get out of here, let's go."

After the robbers fled, Briggs called police, explained he had just been robbed, and gave an extensive description of the two assailants. This report was broadcast to patrol officers, several of whom drove to the area of the robbery. One officer, Steven Almon, began to check the streets in the surrounding area for any unusual activity which might be related to the robbery. He noticed a car parked approximately two blocks away with the dome light on. He drove past the car and observed two males matching the general description of the robbers sitting in the car. After making a U-turn he pulled up behind the parked car. Defendant Jones got out from the driver's side of the car and walked toward Officer Almon. The passenger, defendant Stuart, got out of the car and at the same time Officer Kerry Chastain arrived at the scene. He escorted Stuart over to the spot where Officer Almon and Jones were talking and told Officer Almon he had seen something in the

car. Officer Almon walked to the passenger side of the car, shined his flashlight in the car and observed on the floorboard a stocking cap, a gray coin wrapper and a large amount of loose change. Upon making a radio inquiry, he was advised that rolled coins had been taken in the robbery. After receiving this information the officer looked into the car again and saw another stocking cap from which a gun barrel was protruding. He advised Jones and Stuart they were under arrest and read them their rights.

The car and its contents were secured by another police officer until lab investigators arrived and Officers Almon and Chastain took Jones and Stuart in separate cars to the scene of the gas station robbery. Both defendants were removed from the patrol cars and positioned under the floodlights on the service station drive. The victim made a positive identification of both defendants as the robbers who held him up approximately one-half hour earlier.

At trial the victim testified he was able to make positive identification of the defendants at the scene based upon the clothes they were wearing. He described the gun used by defendants and said the gun marked as state's Exhibit 10 was the same gun that had been used in the robbery. The station manager testified that $127.16 in bills, rolled coins and loose change was taken. Police officers testified they recovered $108.47 in bills, rolled coins and loose change from defendants and the vehicle.

Both defendants testified in their own behalf, seeking to establish an alibi. Stuart testified he had been at home all evening watching television with his wife until his cousin, Daryl Jones, came to the house. They then went out to the car and talked until they were arrested by the police. Stuart sought to explain the possession of the handgun by stating he had found it a few days earlier and had taken it to Jones' car with him to ask Jones if he knew someone who might like to buy it.

Jones testified he had gone to Wichita North to watch a basketball game between his alma mater, Wichita South, and Topeka. He left before the game was over, because South was ahead, and drove to his cousin's house. He and his cousin sat in the car and talked until the police stopped them. He explained the presence of the large amount of cash by stating he had just received his income tax refund. He collected change and rolled it, which explained the large amount of loose and rolled change in the car.

At the conclusion of the defendants' evidence the state introduced rebuttal to the effect that defendant Jones had originally told police he and his cousin were working on the car when police stopped them, not that they were talking to one another about the gun. The state introduced a prior statement by Jones that he didn't know the gun was in the car or how it got there. Also introduced was a prior statement by Stuart telling police the gun was Jones' and he was trying to sell it to Stuart when police came upon them.

### Common Issues

As their first common ground on appeal, Jones and Stuart allege the state asked improper questions during voir dire and the trial court abused its discretion in overruling their objection. The dispute arose when the prosecutor asked prospective jurors if they could give both the defendants and the state a fair hearing. Both defendants objected and were overruled.

Defendants argue the state is not entitled to a fair trial; this right belongs only to defendants in a criminal trial. We cannot agree. Fundamental to the jury system of justice is the concept that jurors will be fair and impartial and decide a case upon the evidence presented. It would be of little avail for the state to try a case before a jury which would not give it a fair hearing and decide the case upon the evidence. To rule that the state did not have a right to a fair hearing would make the statutory procedure for selecting a jury in a criminal case, including the right to challenge for cause and to peremptory challenge (K.S.A. 22-3410 and 22-3412), a hollow gesture. Defendants somehow believe that asking the jury to give the state a fair trial destroys the requirement that a defendant must be found guilty beyond a reasonable doubt. That is not the case. Each juror in voir dire agreed that he must be convinced beyond a reasonable doubt before he could find either defendant guilty. They were so instructed by the trial court. There is nothing in the record to indicate the jurors did not follow the instruction.

Defendants' other common complaint arises from the instruction on the jury's duty to find defendants not guilty if it has a reasonable doubt as to their guilt. The instruction was taken verbatim from PIK (Criminal) 52.02. Defendants argue the jury should have been instructed they "must" find the defendants not guilty if there is a reasonable doubt, rather than the jury "should"

find the defendants not guilty. They argue the word "must" is mandatory and complies with K.S.A. 21-3109, while "should" is permissible and does not comply with the statute. We do not agree. In *State v. Connor,* 74 Kan. 898, 87 Pac. 703, this court held that the word "should" as used in instructions in a criminal case conveys a sense of duty and obligation and could not be misunderstood by a jury. The instruction used in this case has been held to be proper in *State v. Wilkins,* 215 Kan. 145, 523 P.2d 728, and *State v. Taylor,* 212 Kan. 780, 512 P.2d 449.

### Defendant James C. Stuart

Defendant Stuart raises five points on appeal which are not raised by Jones. First, Stuart complains of the use of the rebuttal testimony concerning the presence of the gun in the car. Most of the rebuttal testimony was directed at impeaching Jones' story; therefore, it must be disregarded when considering this specification of error. The only rebuttal testimony directed toward impeaching Stuart was his prior statement to police that Jones had the gun and it was he who brought the gun to Stuart, hoping they could find someone who would buy it.

Stuart contends the trial court abused its discretion in allowing the rebuttal testimony to be admitted because it led him into an "ambush" and prejudiced his case. In *State v. Burnett,* 221 Kan. 40, 558 P.2d 1087, this court stated:

". . . The use and extent of rebuttal rests in the sound discretion of the trial court. [Citations omitted.] The ruling of the trial court will not be ground for reversal unless it appears discretion has been abused to appellant's prejudice. . . ." (p. 43.)

In 29 Am. Jur. 2d, Evidence, § 250, pp. 298-99, we find the following:

". . . Rebutting evidence is that which is given to explain, repel, counteract, or disprove testimony or facts introduced by or on behalf of the adverse party. Such evidence includes not merely evidence which contradicts the witnesses on the opposite side and corroborates those of the party who began, but also, evidence in denial of any affirmative fact which the answering party has endeavored to prove."

Applying the aforestated test to the facts of this case, we find no abuse of discretion in the admission of the rebuttal testimony.

The next point of error concerns the presence in the courtroom of a gun other than the gun identified by the victim as the robbery weapon. The second gun was not admitted into evidence and

apparently had no connection with the robbery. When the second gun was brought to the attention of the trial judge on a motion for mistrial he found that the gun had not been prominently displayed during trial so as to influence the jury to the prejudice of Stuart.

This court has stated that in the absence of a showing of bad faith, the display of a firearm thereafter not introduced as an exhibit does not automatically constitute prejudicial error. (*State v. Basker,* 198 Kan. 242, 424 P.2d 535; *State v. Brown,* 193 Kan. 654, 396 P.2d 401.) We would caution, however, that the practice of the prosecutor of having such exhibits brought into the courtroom where the jury will see them, with no expectation that the exhibits will be offered into evidence or received as evidence, is frowned upon and under proper circumstances could lead to a mistrial. In this case, the trial court's refusal to grant a mistrial was not an abuse of discretion. (*State v. Rueckert,* 221 Kan. 727, 561 P.2d 850.)

Stuart argues the trial court erred in failing to instruct on simple robbery as a lesser included offense of aggravated robbery. The point has no merit. Defendants defended on the theory of alibi; *i.e.,* they didn't rob the gas station, someone else did. The presence of a gun was never in dispute. Defendants were guilty of aggravated robbery or nothing. (See, *State v. Colbert,* 221 Kan. 203, 557 P.2d 1235; *State v. Huff,* 220 Kan. 162, 551 P.2d 880; *State v. Buggs,* 219 Kan. 203, 547 P.2d 720; *State v. Cameron & Bentley,* 216 Kan. 644, 533 P.2d 1255; *State v. Hollaway,* 214 Kan. 636, 522 P.2d 364.)

The trial court instructed the jury it had the duty to evaluate the credibility of the witnesses, using PIK (Criminal) 52.09. In addition, the trial court submitted PIK (Civil) 2.24, which apprised the jury what to do with testimony of a witness who has testified falsely on a material matter. Stuart argues the additional instruction should not have been given, citing no authority for his position. The trial court is under a duty to fully and properly instruct the jury in accordance with the facts and law of the case. In the case at bar the evidence revealed that one or more of the witnesses were willfully lying to the jury on material issues. The jury needed to know how to evaluate the testimony of those witnesses once it had evaluated their credibility. The judge's instruction supplied them with the necessary guidance.

Finally, Stuart argues the evidence was insufficient to establish his guilt. No doubt an aggravated robbery was committed by two black males. The issue at trial was the identity of the perpetrators. Evidence on this point was supplied by the victim who described both defendants in explicit detail and made a positive identification minutes after the robbery and at trial. Abundant physical evidence, including the gun, clothing and loot found in the car corroborated the victim's identification. There was more than enough evidence to sustain the conviction.

### Defendant Daryl B. Jones

The only additional points raised by defendant Jones concern the sentence imposed by the trial court. Because the crime was perpetrated with a firearm the trial court refused probation or suspension of sentence and imposed the minimum sentence pursuant to the requirements of K.S.A. 1976 Supp. 21-4618 (now 1977 Supp.).

Jones challenges the constitutionality of K.S.A. 1976 Supp. 21-4618 on the basis that it constitutes cruel and unusual punishment, denies due process and equal protection of the law, and violates the doctrine of the separation of powers between the judicial and legislative branches of government. Each of these points concerning the mandatory sentencing act was raised and determined adversely to the defendant in *State v. Freeman,* 223 Kan. 362, 574 P.2d 950. It would serve no purpose to iterate what was said by Mr. Justice Fromme in that opinion other than to state that it controls here.

Jones next argues the trial court improperly interpreted K.S.A. 1976 Supp. 21-4618 to deny the possibility of a suspended sentence. The trial court concluded that the mandate required a sentence be imposed, thus precluding the use of a suspension of sentence as defined in K.S.A. 21-4602(2). Although this is an issue of first impression with this court the question before us has been answered by the court of appeals in *Esters v. State,* 1 Kan. App. 2d 503, 571 P.2d 32. It was the court's conclusion that when 21-4618 applies, the defendant cannot be granted probation, nor can sentence be suspended.

We have carefully reviewed the decision in *Esters* and agree with the position taken by the majority of the panel.

Finally, Jones argues he cannot be sentenced under K.S.A. 1976 Supp. 21-4618 because he was an accomplice and did not

personally use the firearm in the commission of the crime. To support his position Jones relies on Attorney General Opinion 77-135 and *People v. Tarpley,* 267 Cal. App. 2d 852, 73 Cal. Rptr. 643 (1968). K.S.A. 1976 Supp. 21-4618 states:

"Probation shall not be granted to any defendant who is convicted of the commission of any crime set out in article 34 of chapter 21 of the Kansas Statutes Annotated in which the defendant used any firearm in the commission thereof and such defendant shall be sentenced to not less than the minimum sentence of imprisonment authorized by law for that crime. This section shall apply only to crimes committed after the effective date of this act."

Whether this statute applies to an unarmed accomplice is a question of first impression. We hold that it does not apply.

By the terms of the statute, probation, parole or suspension of sentence is denied to any defendant convicted of an article 34 crime in which "the defendant used any firearm in the commission thereof and such defendant shall be sentenced. . . ." The term "defendant" is used in the singular throughout the statute. At no time is the term "defendants" used. By the same token the statute does not refer to mandatory sentencing applying to aiders and abettors, accomplices or co-conspirators. It is well understood that criminal statutes must be strictly construed against the state and in favor of the defendant. We hold that the statute applies only to the defendant personally armed with a firearm at the time the crime is committed.

The convictions of both defendants are affirmed, as is the sentence of defendant Stuart. The sentence of defendant Jones is vacated and the case is remanded to the trial court for resentencing in accordance with this opinion.

HOLMES, J. dissenting in part and concurring in part: I must respectfully dissent from that portion of Syl. 4 and the holding in Syl. 6, subsection (9), together with the corresponding portions of the opinion, wherein the majority find that K.S.A. 1976 Supp. 21-4618 (now K.S.A. 1977 Supp. 21-4618) precludes suspension of sentence by the trial court. I would adopt the views set forth in the dissent by Parks, J., in *Esters v. State,* 1 Kan. App. 2d 503, 506-508, 571 P.2d 32.

I concur with the majority in the balance of the opinion.