(596 P.2d 174)

No. 50,183

STATE OF KANSAS, *Appellee,* v. STEPHEN JEFFERY THOMPSON, *Appellant.*

Petition for review denied September 14, 1979.

Opinion filed June 15, 1979.

*Patrick Nichols,* of Topeka, for the appellant.

*Gene M. Olander,* district attorney, *Robert T. Stephan,* attorney general, and *Ronald E. Wurtz,* assistant district attorney, for the appellee.

Before SPENCER, P.J., SWINEHART and MEYER, JJ.

SWINEHART, J.: Defendant, Stephen Jeffery Thompson, appeals his multiple jury convictions of attempted aggravated robbery (K.S.A. 21-3301 and 21-3427), aggravated battery (K.S.A. 21-3414), unlawful possession of a firearm (K.S.A. 21-4204[1][*b*]), and his sentencing for the aggravated battery conviction under the provisions of the mandatory sentencing act (K.S.A. 1978 Supp. 21-4618).

Defendant alleges his conviction of attempted aggravated robbery should be set aside because there was a material variance between the crime charged in the information and the evidence produced at trial. That information was worded as follows:

"Count 2: ATTEMPTED AGGRAVATED ROBBERY K.S.A. 21-3301 and 21-3427. On the _____ day of October, 1977, in the County of Shawnee and State of Kansas, Stephen Jeffery Thompson, did then and there unlawfully, feloniously and willfully, in the perpetration of the crime of Aggravated Robbery as defined by K.S.A. 21-3427, commit the following overt act, to-wit: take money or property from the person or presence of Alan E. Day, while armed with a deadly weapon, with the intention to commit said crime, but failed in the perpetration thereof, contrary to the form of the statutes in such case made and provided and against the peace and dignity of the State of Kansas."

Defendant further alleges that there was insufficient evidence to support his conviction as an accomplice of the crime of aggravated battery as set out in Count 3; that the court erred by imposing sentence for the aggravated battery conviction under the mandatory sentencing act, K.S.A. 1978 Supp. 21-4618; and that the court erred in failing to suppress the admission of two firearms as evidence.

The defendant was charged with additional counts of aggravated robbery for which the jury returned a verdict of not guilty, and of unlawful possession of a firearm for which the jury returned a verdict of guilty. Defendant does not here appeal this latter conviction.

On October 4, 1977, two men, in the company of each other, entered the Day Retail Liquor Store in Topeka. One was described as wearing a blue ski mask and the other a red one. Each

carried a small handgun while entering the store. As the owner, Alan E. Day, reached for a weapon kept under the counter, the person wearing the red ski mask said "Don't do it," pointed his weapon approximately one and one-half feet from Mr. Day's head, and pulled the trigger. However, the gun misfired. Thereafter, the blue-masked man fired twice at Mr. Day, striking him once in the shoulder. Then the men fled the store in different directions without removing any money or property. The victim was unable to identify his assailants.

Rodolfo Mendoza, the proprietor of a restaurant and motel situated next to the Day Retail Liquor Store, had observed the two men enter the liquor store. He heard two gunshots and then saw two men leaving the store. One of them, described as carrying what was thought to be a red handkerchief in his hand, ran toward the Mendoza business. Mr. Mendoza, who was standing in his back door, then opened the door and was squarely face-to-face with the man carrying the red object. He noted that the man was wearing a jeans jacket and was blond. He had a broken nose with blemishes and a mustache. He was able to identify this defendant from a photograph shown to him on October 6, 1977, and later made a courtroom identification during the trial.

Earlier in the evening of the attempted robbery, Edgar Peck was traveling down the road next to the Mendoza business and observed a late model brown car which he thought to be a Thunderbird or a Mercury. Approximately fifteen minutes later he returned to the area and provided the police with this information.

During its investigation, the Topeka Police Department received a tip from a confidential informant as well as information from the Lawrence Police Department and the Motel Six manager in Topeka which led them to a motel room in south Topeka where they recovered two ski masks, one red and one blue. Based upon their investigation, they now had a more specific description of the defendant's vehicle as well as its license tag number. Two days after the liquor store incident in Topeka, the police stopped a brown Mercury Cougar which was occupied by the defendant Thompson, Caprice Stark (his financee), and another male. Both males were ordered from the car, searched and handcuffed.

Detective Mogge, who was on the scene, observed that Ms. Stark's purse seemed unusually heavy and therefore removed it

from her arm, tossing it to the rear of the vehicle. As he grabbed the purse, he felt an object which he thought to be a firearm. After Stark was secured, he looked inside the purse and observed the handgun. A more thorough examination of the purse at the police station disclosed two small caliber handguns which were seized. The purse also contained a key to the motel room in which the ski masks were found. Both guns were admitted into evidence over the objection of the defendant's attorney, after a motion to suppress hearing.

We turn first to defendant's contentions that there was a material variance between the information and the proof adduced at trial requiring vacation of his conviction of attempted aggravated robbery. Robbery, as defined by K.S.A. 21-3426, is the taking of property from the person or presence of another by threat of bodily harm to his person or the person of another or by force, and aggravated robbery, as defined by 21-3427, is a robbery committed by a person who is armed with a dangerous weapon or inflicts bodily harm upon any person in the course of such robbery. Attempt, as defined by K.S.A. 21-3301, is *any overt act* toward the perpetration of a crime performed by a person who intends to commit such crime but who fails in the perpetration thereof or *is prevented* or intercepted in executing such crime.

The defendant's basic contention is that the overt act set forth in the information which the State failed to prove was "take money or property from the person or presence of Alan E. Day." He argues the court should have instructed the jury that the overt act must be proven and that counsel should have been permitted to read the applicable count of the information to the jury. In short, the defendant contends that the information, as worded, required the State to prove the overt act "to take money" and such evidence alone would support a conviction under Count 2 as charged.

This assertion is without merit. K.S.A. 22-3201(2) provides that an information must contain a plain and concise written statement of the essential facts constituting the crime charged so that "the accused shall be definitely informed as to the charges against him" (*State v. Miles,* 203 Kan. 707, 710, 457 P.2d 166 [1969]), and so be protected against surprise evidence. In this case we find that the charge of attempted aggravated robbery was stated in the language of the statutes defining the elements of the crimes of

attempt, robbery and aggravated robbery, and that without question the defendant was not prejudiced by the wording of the information. In addition, he has had the benefit of a preliminary hearing, pretrial discovery and a bill of particulars, all of which demonstrated that the State never contended that the defendant had taken property from Alan E. Day. Indeed, the State had never so contended at any stage of the proceedings.

Upon a review of the record we find that the court's instructions to the jury were a correct statement of the law, and that the refusal to instruct on the specific point of overt act as requested was not error. A refusal to give a specific requested instruction does not constitute reversible error when the instructions given are consistent with the applicable law. *Bechard v. Concrete Mix & Construction Inc.,* 218 Kan. 597, 545 P.2d 334 (1976). Further, the court's refusal to permit the reading of the information to the jury by counsel for defendant in final argument is not reversible error because the appellant has failed to show how this refusal substantially prejudiced his rights. *State v. Ambler,* 220 Kan. 560, 552 P.2d 896 (1976).

We now consider defendant's contention that the two handguns were erroneously admitted into evidence. The facts surrounding the discovery and seizure of the guns are not in dispute. The guns were in the shoulder purse of Caprice Stark. Ms. Stark was a known companion of the defendant. The defendant, Ms. Stark and another male were all occupants of the vehicle when defendant was finally apprehended. During the criminal investigation, the police had determined the identity of defendant Thompson and had obtained a fairly good description of an automobile thought to have been used by the two parties committing the Topeka offenses and a similar offense in Lawrence for which they were also suspects. In both instances the alleged robbers were armed with dangerous weapons. When the automobile of a like description was then located by the Topeka police on South Topeka Boulevard near the location of the motel where the defendant and others had lodged a few days earlier in the week, a stakeout by several officers was instituted. When their suspect, the defendant, emerged in the company of another male and Stark and entered the automobile thought to be involved in the incident at the Day Retail Liquor Store, the police gave chase and the defendant was arrested. Defendant asserts that the police

had no probable cause to connect Stark with any criminal activity and so the discovery of the weapons was the result of an unreasonable warrantless search. As such, the seizure constituted a secondary illegality and the weapons were not admissible because of the poison tree doctrine. The determinative question is whether the search of the Caprice Stark purse was based upon reasonable suspicion (K.S.A. 22-2402) and/or a search incident to a lawful arrest (K.S.A. 22-2501).

The facts here undeniably support that there was probable cause to arrest the defendant, and in connection with that arrest to make a search of his person and the area within his immediate presence as contemplated by K.S.A. 22-2501. We think the facts also fairly show that the defendant was known to have a woman companion, even though it is not contended that she personally participated in any of the alleged crimes under discussion. The fact that Ms. Stark was in the company of the two suspects under the existing circumstances brings the search of her purse within the permissible limits of warrantless search and seizure as described in *Terry v. Ohio,* 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868 (1968); *State·v. Jackson,* 213 Kan. 219, 515 P.2d 1108 (1973); *State v. Hazelwood,* 209 Kan. 649, 498 P.2d 607 (1972); and K.S.A. 22-2402. The fact that the purse was thrown to the road after being taken from Stark's person was not such a removal from the area under her control so as to prohibit the protective search at the scene prior to returning the purse to Ms. Stark before transporting the defendant to the police station. *State v. Dean,* 2 Kan. App. 2d 64, 574 P.2d 572 (1978), is distinguishable from the facts of this case because the purse here was not yet in the exclusive control of the police as contemplated by *Dean.* We therefore conclude that the warrantless search of the purse and seizure of the guns was legal, and that the admission of the two guns into evidence was proper.

The defendant's third argument is that there was insufficient evidence to support the jury's guilty verdict for aggravated battery (K.S.A. 21-3414). Our scope of review on such a question is well settled. The only determination is whether there was sufficient evidence to reasonably infer guilt when viewed in the light most favorable to the State. *State v. Berry,* 223 Kan. 566, Syl. ¶ 3, 575 P.2d 543 (1978); *State v. Ritson,* 215 Kan. 742, 744, 529 P.2d 90 (1974). Briefly, the facts are that defendant and another entered

the store together, displaying weapons. The defendant fired his gun, which misfired, and his companion fired his gun, inflicting a wound on the store operator. K.S.A. 21-3205(1) provides: "A person is criminally responsible for a crime committed by another if he intentionally aids, abets, advises, hires, counsels or procures the other to commit the crime." The jury was properly instructed on that theory of the law. The evidence presented was without question sufficient to submit to the jury and the jury could infer the defendant's criminal responsibility for aiding and abetting the aggravated battery. *State v. Edwards,* 209 Kan. 681, 498 P.2d 48 (1972). To be held guilty of aiding and abetting, it must only be shown that the defendant willfully participated in an unlawful venture in a manner evincing his wish for it to succeed. *State v. Wilson & Wentworth,* 221 Kan. 359, 559 P.2d 374 (1977); *State v. Schriner,* 215 Kan. 86, 523 P.2d 703 (1974). The trial court did not err in this regard.

Finally, defendant contends that the trial court erred in imposing a mandatory sentence for his conviction of aggravated battery because he did not "use" a firearm within the meaning of K.S.A. 1978 Supp. 21-4618, which reads as follows:

"Probation shall not be granted to any defendant who is convicted of the commission of any crime set out in article 34 of chapter 21 of the Kansas Statutes Annotated in which the defendant used any firearm in the commission thereof and such defendant shall be sentenced to not less than the minimum sentence of imprisonment authorized by law for that crime. This section shall apply only to crimes committed after the effective date of this act."

The purpose of the above legislation was to deter the use of firearms by persons committing certain specific crimes against persons. In cases where more than one person has been involved in a covered offense, our Supreme Court has held that one who is unarmed during the commission of the offense, even though liable as an accomplice or an abettor, would not be subject to sentencing as provided in K.S.A. 1978 Supp. 21-4618. *State v. DeCourcy,* 224 Kan. 278, 580 P.2d 86 (1978); *State v. Stuart and Jones,* 223 Kan. 600, 575 P.2d 559 (1978). However, each of those cases is distinguishable from the facts of this action, as will be discussed further below.

The factual situation presented to this court is one of first impression. Without question the cases that have been reviewed by the appellate courts leave no doubt that the provisions of this section apply only when a firearm is used in the commission of

the offense. Our facts here are not in dispute. The defendant possessed a gun at the time the alleged offense was committed. The firearm was in plain view, that is to say the defendant had the gun in his hand and pointed it within a foot and a half of the head of the proprietor who was ultimately wounded by defendant's companion.

Kansas courts have stated that the enactment of K.S.A. 1978 Supp. 21-4618 was an attempt to deter the criminal use of firearms against persons. *State v. Freeman,* 223 Kan. 362, 369, 574 P.2d 950 (1978); *Esters v. State,* 1 Kan. App. 2d 503, 571 P.2d 32 (1977). However, in adopting this provision the legislature very obviously failed to define the words "use" and "firearm" which has resulted in uncertain interpretation of the provision. The defendant asserts that the word "use" is ambiguous while the State claims that its ordinary meaning is clear.

Both parties agree that criminal statutes must be strictly construed in favor of those against whom they are to be applied and that ordinary words are to be given their ordinary meaning. *State v. Bishop,* 215 Kan. 481, 524 P.2d 712 (1974); *State, ex rel., v. American Savings Stamp Co.,* 194 Kan. 297, 398 P.2d 1011 (1965); *Esters v. State,* 1 Kan. App. 2d 503.

Nonetheless, these fundamental rules do not provide an easy resolution of the issue presented here. Since the defendant's role is that of an *aider and abettor* as far as the aggravated battery charge is concerned, whether he could possibly be deemed to have "used" the firearm within the meaning of the statute is at least debatable.

Kansas case law interpreting the meaning of the words "use" and "firearm" contained in the statute has begun to emerge, evincing a rather strict interpretation of the statute's application. Although the three main cases on the subject are factually distinguishable from the instant action, they together provide guidance for resolving the question.

In *State v. Stuart and Jones,* 223 Kan. 600, the defendant Jones appealed from a conviction of aggravated robbery and argued he could not properly be sentenced under K.S.A. 21-4618 because he was a mere accomplice to the crime and did not personally use a firearm in its commission. His partner, Stuart, had used the gun and jabbed it into the ribs of the station attendant at the gas station they were attempting to rob to induce him to turn over the

operation's money. Jones, on the other hand, displayed no gun and merely kept a lookout while these activities were going on. He did, however, drive the getaway car. Finding this a question of first impression, the Supreme Court held that the statute did not apply to an *unarmed* accomplice. Although the court stated in the opinion "By the same token the statute does not refer to mandatory sentencing applying to aiders and abettors, accomplices or coconspirators," it nevertheless later held "that the statute applies only to the defendant personally armed with a firearm at the time the crime is committed." *State v. Stuart and Jones,* 223 Kan. at 607. Since that case involved a defendant who carried no weapon, it is certainly arguable that the holding need not necessarily apply to all accomplices, but only to unarmed ones.

In a later case, two defendants were convicted of robbing a tavern. One of them, DeCourcy, obtained a rifle, concealing it upon his person, and after discussing the possibility of robbing the tavern with the defendant Carr, approached the manager, exhibited the rifle, and announced a robbery was in progress. Both defendants then took money from the cash register. It was stipulated that only the defendant DeCourcy had possession of the firearm during the incident. DeCourcy was sentenced under K.S.A. 21-4618 and the court stated:

"In our judgment, for the statute to be applicable, the state must establish, and the sentencing court must find, that the firearm was an instrumentality of the crime. In a robbery case, the statute requires proof that the firearm was used as an instrument of force to overcome the will of the victim, resulting in the transfer of possession of property from the victim to the robber." *State v. DeCourcy,* 224 Kan. at 281.

And the facts so demonstrated with respect to the defendant DeCourcy. However, the court relied upon *State v. Stuart and Jones,* 223 Kan. 600, to determine that the other defendant, Carr, could not be sentenced under K.S.A. 21-4618 because he was an *unarmed* accomplice and did not "use" a firearm.

In this case the actions of the defendant must certainly be deemed to constitute "use" within the meaning of *State v. DeCourcy,* as his actions of pointing the gun, firing it, and stating the words "Don't do it" constitute much greater action and therefore "use" than the mere exhibition of a gun and the words "This is a robbery" as DeCourcy did. Defendant argues, however, that the *DeCourcy* case mandates a finding that the firearm was an

instrumentality of the crime. Appellant concedes that if he had been charged with aggravated assault, he would be deemed to have used the gun. However, he was charged under the aggravated battery statute, and it was his companion who actually shot the victim with a deadly weapon and established all of the elements of the aggravated battery charge. He further denies that his actions in any way may have influenced the shooting of Mr. Day by his accomplice. The State asserts, however, that if his gun had fired properly, it would have been considered an instrumentality of the crime and that the jury could find that the defendant did intend to shoot Mr. Day. As a result, his actions were at least some kind of a statement or signal to his accomplice to shoot Mr. Day. In that sense, the State argues, he should be held to have used his weapon as an instrumentality of the crime to bring himself within the purview of K.S.A. 1978 Supp. 21-4618.

The State's argument is convincing, as both *State v. Stuart and Jones,* 223 Kan. 600, and *State v. DeCourcy,* 224 Kan. 278, speak only to *unarmed* accomplices and therefore are nonpersuasive when an armed accomplice has actively participated in the criminal conduct as evidenced by the facts in this case. *State v. Deutscher,* 225 Kan. 265, 589 P.2d 620 (1979), also supports affirmation of the trial court, although the precise issue in that case differs from the one under consideration here. There the defendant pointed a .357 magnum revolver at a police officer but fired no shots. The defendant was convicted of aggravated assault on a law enforcement officer, although the gun was unloaded at the time it was so pointed. One of the issues on appeal was whether an unloaded revolver was a firearm within the meaning of K.S.A. 21-4618. There the court held that the use of a firearm by a defendant in any crime within article 34, chapter 21, would require the imposition of a sentence under K.S.A. 21-4618, even if the firearm was unloaded. The court found that the gun was capable of discharging a bullet, and had there been evidence that it was not mechanically capable of firing one, then the court intimated that it might have reached a different conclusion. Since the case does at least stand for the proposition that an unloaded firearm falls within the definition of "firearm" in the statute, it seemingly refutes those portions of the defendant's argument that rely so heavily upon the showing that the gun misfired. Since the defendant's gun in this case was loaded, he is in an even worse position than the defendant in *Deutscher.*

Under the facts of this case, the participation of the defendant with another in the commission of the aggravated battery constituted the required "use" of a firearm to bring him within the mandatory sentencing provisions contained in K.S.A. 1978 Supp. 21-4618.

We find that the court did not err in any of the four grounds set forth in this appeal.

Judgment of the trial court is affirmed.