No. 69,597

STATE OF KANSAS, *Appellee,* v. MICHAEL MCCLOUD, *Appellant.*
(891 P.2d 324)

2

Opinion filed February 28, 1995.

*Julie A. Gorenc*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the briefs for appellant. Appellant filed a brief pro se. ˙

*Jackie E. Ulrich*, assistant district attorney, argued the cause, and *Paul J. Morrison*, district attorney, and *Robert T. Stephan*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant appeals his convictions and sentence imposed on 12 counts of aggravated robbery, K.S.A. 21-3427. On appeal, the defendant claims: (1) his sentence violates the constitution; reflects partiality, prejudice, or corrupt motive of the judge; and violates the requisite considerations of K.S.A. 21-4601;

(2) law enforcement officers used excessive force in executing a search warrant; (3) the judge failed to instruct on a lesser included crime; (4) the judge improperly instructed the jury on criminal intent; and (5) defendant was denied meaningful access to the court.

Michael McCloud was convicted of 12 separate aggravated robberies of convenience stores, grocery stores, and restaurants committed between September 1990 and January 1991. McCloud was originally sentenced to consecutive terms of 15 years to life on each conviction, for a controlling term of 180 years to life. McCloud's sentence was later modified to consecutive terms of 8 years to life on each count, for a controlling term of 96 years to life. The facts surrounding each robbery are not at issue in this appeal and therefore are not discussed except where pertinent to the analysis of those issues which have been raised.

### Cruel or Unusual Punishment

McCloud argues that his controlling sentence of 96 years to life is so excessive and disproportionate to his crimes that it constitutes cruel or unusual punishment in violation of § 9 of the Kansas Constitution Bill of Rights. Although the Kansas constitutional prohibition against cruel or unusual punishment is directed primarily at the kind of punishment imposed rather than its duration, the length of a particular sentence may be so excessive as to constitute cruel or unusual punishment. *State v. Strauch*, 239 Kan. 203, 220, 718 P.2d 613 (1986); *State v. McDaniel & Owens*, 228 Kan. 172, 185, 612 P.2d 1231 (1980).

This court has previously recognized that the imposition of consecutive sentences does not per se constitute cruel or unusual punishment. *State v. Tyler*, 251 Kan. 616, 647, 840 P.2d 413 (1992) (controlling sentence of 111 to 330 years held not to violate § 9 of Kansas Constitution Bill of Rights); *In re MacLean*, 147 Kan. 678, Syl. ¶ 4, 78 P.2d 855 (1938) (consecutive sentences following guilty verdicts held not to violate constitutional provision forbidding cruel or unusual punishment).

In determining whether the length of a sentence offends the constitutional prohibition against cruel or unusual punishment,

three factors are considered: (1) the nature of the offense and the character of the offender, with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of the offender's culpability for any resulting injury, and the penological purposes of the prescribed punishment; (2) a comparison of the penalty with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question, the challenged penalty is to that extent suspect; and (3) a comparison of the penalty with punishments in other jurisdictions for the same offense. *State v. Freeman,* 223 Kan. 362, 367, 574 P.2d 950 (1978).

McCloud presented no evidence regarding the third factor set forth in *Freeman* but argues that evaluation of the first two factors reveals that the sentence imposed is so excessive and disproportionate that it constitutes cruel or unusual punishment. Considering the first *Freeman* factor, the nature of the offense and the character of the offender, McCloud argues that the district judge failed to consider that no one was injured, he verbally threatened the victims in only 3 of the 12 robberies he committed, he displayed a gun in a threatening manner in only 5 of the 12 incidents, and he took only $11,000 to $12,000, not hundreds of thousands of dollars. McCloud further points out that these are his first convictions, there is nothing in his background to indicate a violent disposition or evidence of a drug or alcohol problem, and letters from supervisors in prison indicate he has been a model prisoner and helpful to others.

McCloud's arguments are most unusual and not convincing. McCloud committed 12 separate aggravated robberies over a period of several months. While he may have displayed a gun in less of a threatening manner during some of the robberies, there is no question that McCloud wore a mask and held a loaded gun during each crime. The evidence at trial indicates that had someone resisted, there could have been serious injury or death. We have recognized that aggravated robbery committed with a firearm is an inherently dangerous felony regardless of whether anyone is injured

by the firearm. *McDaniel & Owens*, 228 Kan. at 185. During direct examination by the prosecutor, the defendant's girlfriend, who had participated in several of the robberies, testified:

"A. Before he would rob a place as he was loading the guns he would wipe the bullets off real good so there weren't any fingerprints on the bullets if he had to use it. If he got bank bags, he'd always wipe the bank bags down real good and carry them with a towel or rag or something so there would never be fingerprints on them.

. . . .

"Q. So were the weapons always loaded that he used?

"A. Yes, sir, they were."

The amount of money taken in an aggravated robbery has little bearing on the punishment imposed for this particular crime. Had more money been available, McCloud's proceeds from the aggravated robberies would have been greater. See 228 Kan. at 185. As to McCloud's character, the presentence investigation report indicates McCloud exhibits no remorse for his crimes.

When a sentence is fixed by the trial judge within permissible limits of the applicable statutes, the sentence is not erroneous. In the absence of special circumstances showing an abuse of judicial discretion, it cannot be determined on appeal that such a sentence is excessive or so disproportionate to the offense to constitute cruel or unusual punishment. *State v. Pettay*, 216 Kan. 555, Syl. ¶ 4, 532 P.2d 1289 (1975). Under the statutes applicable at the time of McCloud's crimes, aggravated robbery was a class B felony and had a minimum sentence of 5 to 15 years and a maximum sentence of 20 years to life. See K.S.A. 21-3427 and K.S.A. 21-4501. McCloud's ultimate sentence of eight years to life for each aggravated robbery is well within the court's discretion.

As to the second *Freeman* factor, McCloud argues that the sentencing judge failed to consider that an individual who commits five first-degree or second-degree murders and is sentenced to maximum consecutive terms of imprisonment for those murders would receive a lesser sentence than the sentence imposed upon him. McCloud speculates that because his controlling term of imprisonment is longer than that imposed on a multiple murderer, the length of his sentence is cruel or unusual, and he should be resentenced.

McCloud's rationale that an individual sentenced for 5 murders would receive a lesser sentence than the sentence imposed on him for 12 separate aggravated robberies is not the type of comparison required by *Freeman.* Taken to its extreme, McCloud's reasoning would compel resentencing if a defendant convicted of numerous class B felonies could show that another who had committed fewer class A felonies had received a lesser penalty. McCloud's rationale fails to prove that the sentence imposed for 12 separate aggravated robberies was cruel or unusual punishment.

In his pro se brief, McCloud observes that § 9 of the Kansas Constitution Bill of Rights prohibits cruel *or* unusual punishment, as opposed to cruel *and* unusual punishment, prohibited by the United States Constitution. McCloud asserts that his sentence is unusual because, given his age and the life expectancy of an inmate in confinement, the sentence imposed guarantees that he will die in prison.

The fact that the minimum sentence imposed by a trial court exceeds the life expectancy of the defendant is not grounds, per se, for finding that the sentence is oppressive or constitutes an abuse of discretion. *State v. Tyler,* 251 Kan. at 647. Applying the three-pronged test of *Freeman* to this case, we find that a sentence of 96 years to life for 12 separate aggravated robberies is not so cruel or unusual either in its method or its length that it shocks the conscience and offends fundamental notions of human dignity so as to be constitutionally impermissible.

### Comments by the Judge

McCloud asserts that comments by the judge at sentencing and the hearing on the motion to modify his sentence reflect the judge's incorrect assessment of the facts and disclose that the judge was partial, prejudiced, and had a corrupt motive. He states that the judge inaccurately commented on the type of gun involved in the robberies, on whether the gun was loaded, and on whether he pointed a gun at each of the victims. McCloud asserts that the judge improperly speculated as to his motive for committing the crimes (*i.e.,* that McCloud had apparently chosen to

take up the profession of armed robbery instead of working), as to whether serious injury could have been inflicted (*i.e.*, that McCloud made it clear that if anyone resisted they would be harmed), and as to whether he could compensate the victims.

McCloud particularly objects to the following statements of the judge at sentencing:

"Each of these offenses are completely separate and apart. The victims were confronted in the most threatening manner. They lost substantial sums of money through no fault of their own. There is no excuse or justification for your activities, sir. There is apparently no remorse and you maintain in the face of the evidence that this court finds to be overwhelming that you were not involved. You have taken that position to a point of folly and the court considers that in assessing the sentence being imposed herein."

At the sentence modification hearing, the judge stated:

"[K]eeping in mind the Court's primary goal is not just to protect society from this individual, at this juncture the defendant has not offered much by way of mitigating circumstances. Be that as it may, the Court does not believe that its role is to be vindictive and the court would, therefore, modify the sentence so that defendant's minimum term shall be eight years per each count consecutive to each other. That will allow the defendant at least an opportunity for probation or parole at a very old age, and quite frankly, that is in keeping with the Court's goal that the statistics are once the defendant passes the age of fifty to sixty, there is very little likelihood of repetitious criminal behavior."

Comments by the sentencing judge which are based entirely on evidence presented to the court in its judicial capacity do not necessarily prove that the sentence imposed was improper or reflect partiality, prejudice or corrupt motive by the judge. See *State v. Tran*, 252 Kan. 494, 509, 847 P.2d 680 (1993); *State v. Griffen*, 241 Kan. 68, 72-73, 734 P.2d 1089 (1987). The evidence is that the guns McCloud used were loaded. Whether the judge at sentencing mischaracterized the type of firearm McCloud used or whether the gun was pointed at each victim in the commission of each crime is not relevant. A conviction for aggravated robbery, K.S.A. 21-3427, does not depend upon the type of the firearm or where it was pointed during the commission of the robbery. The statute merely requires the person committing the robbery to be armed with a dangerous weapon. The facts clearly indicate that McCloud displayed a loaded firearm in each of the 12 rob-

beries, McCloud pointed the firearm at the victim during some of the robberies, and in every robbery the firearm was displayed in a threatening manner.

McCloud fails to prove that the sentencing judge improperly speculated as to his motive for committing the crimes or as to whether there could have been serious injury. McCloud incorrectly claims that the court opined that McCloud would not be able to compensate the victims. The judge merely stated, "I don't think there is any basis for believing that [compensation pursuant to K.S.A. 21-4606(2)(g)] is going to be a significant factor in this matter." Later in the hearing the judge stated:

"[G]iven your attitude as reflected here today, given the circumstances of these offenses, I do not believe that you deserve the right to be free to perpetrate harm and possibly injure or kill another individual. The Court would also find but not order that there is restitution due in the amount of $6,792.36. Pursuant to Kansas law, that finding is simply a finding by the Court and [the] Court has no authority to order restitution and sentence you to prison at the same time."

The judge's comments concerning McCloud's refusal to accept responsibility for his crimes, whether the court would modify sentence, and McCloud's likelihood of parole after modification do not indicate partiality, prejudice, or corrupt motive on the part of the court, but represent a concern for the protection of society from repetitious criminal behavior such as McCloud displayed. McCloud fails to demonstrate any partiality, prejudice, or corrupt motive by the judge when imposing the sentence.

### K.S.A. 21-4601

McCloud claims that the trial court abused its discretion in failing to consider his individual characteristics, circumstances, needs, and potentialities at the original sentencing hearing. K.S.A. 21-4601. McCloud argues that the sentence imposed by the judge is not suited to his individual characteristics and that he has been "overpunished." McCloud asserts that the modification of his sentence from 180 years to life to 96 years to life was "literally useless."

It is the sentencing judge alone who determines the appropriate sentence or other disposition of the case. The sentencing judge determines the sentence by exercising his or her best judgment,

common sense, and judicial discretion after considering the sentencing factors set forth in K.S.A. 21-4606(2), all the reports, the defendant's background, the facts of the case, and the public safety. K.S.A. 21-4601 states the objectives of the corrections system but does not require the sentencing court to specifically consider those objectives as it must the factors in K.S.A. 21-4606. *State v. Webb*, 242 Kan. 519, 530, 748 P.2d 875 (1988). See *State v. Richard*, 252 Kan. 872, 850 P.2d 844 (1993). A sentence imposed within the statutory guidelines will not be disturbed on appeal if it is within the trial court's discretion and not a result of partiality, prejudice, oppression, or corrupt motive. *State v. Turner*, 252 Kan. 666, Syl. ¶ 1, 847 P.2d 1286 (1993). When a reviewing court determines that no reasonable person would agree with the trial court's decision, then an abuse of discretion will be found. *State v. Griffin*, 246 Kan. 320, 326, 787 P.2d 701 (1990).

In sentencing McCloud, the district court expressly considered K.S.A. 21-4606(1) and each factor in 21-4606(2). Contrary to McCloud's assertion, the court did take into consideration the fact that he had no prior criminal history. The court also noted that McCloud committed 12 separate robberies with a loaded weapon, that there were numerous people at risk, and that on several occasions it was apparent that had someone resisted, there could have been serious injury. Speaking to McCloud, the court stated: "You certainly made it clear that should anyone resist, they would be harmed." The court found there was no excuse or justification for McCloud's conduct, that the victims of McCloud's crimes did not induce or facilitate the commission of the robberies, and that compensation was not a significant factor. The trial court in sentencing McCloud followed the policy set forth in K.S.A. 21-4601 and did not abuse its discretion.

### Excessive Force In Executing A Search Warrant

On appeal McCloud argues that the police used unnecessary and unreasonable force in executing a search warrant at his residence and, thus, violated his rights under the Fourth Amendment to the United States Constitution and § 15 of the Kansas Con-

stitution Bill of Rights. McCloud did not raise this issue before the trial court or object to the evidence obtained as a result of the search. Under the criminal code, prior to trial a defendant may move to suppress evidence obtained by an unlawful search and seizure. The motion shall be in writing and state facts showing the search and seizure were unlawful. The judge shall receive evidence on any issue of fact necessary to determine the motion. The burden of proving that the search and seizure were lawful is on the prosecution. The motion shall be made before trial, unless opportunity therefor did not exist or the defendant was not aware of the ground for the motion. K.S.A. 22-3216(1), (2), and (3). McCloud asserts that even though he failed to raise the issue at the trial level, in the interest of justice this court must determine whether he was denied his constitutional rights.

Ordinarily, a defendant cannot raise an issue on appeal which was not presented to the trial court. Only where consideration of the new issue is necessary to serve the interests of justice or to prevent a denial of fundamental rights may an appellate court consider an issue not raised in the trial court. See *State v. Clemons*, 251 Kan. 473, 483, 836 P.2d 1147 (1992); *State v. Puckett*, 230 Kan. 596, Syl. ¶ 1, 640 P.2d 1198 (1982). Because McCloud failed to object at trial, the merits of McCloud's argument are subject to harmless error analysis. Under *Chapman v. California*, 86 U.S. 18, 24, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967), an appellate court may not hold a federal constitutional error harmless unless there is little likelihood, if any, of the error having changed the result of the trial, and the court is convinced of such belief beyond a reasonable doubt. See *State v. Rupert*, 247 Kan. 512, Syl. ¶ 4, 802 P.2d 511 (1990).

In *State v. Turner*, 257 Kan. 19, 891 P.2d 317 (1995), this court discussed the exclusionary rule and its purpose. We noted that according to the Fourth Amendment of the United States Constitution, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of an illegal

search and seizure. *United States v. Calandra*, 414 U.S. 338, 347, 38 L. Ed. 2d 561, 94 S. Ct. 613 (1974).

The *Turner* court observed that the primary purpose of the exclusionary rule is to deter unlawful police conduct. The rule "is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *United States v. Calandra*, 414 U.S. at 348. "The rule is calculated to prevent, not to repair. Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it." *Elkins v. United States*, 364 U.S. 206, 217, 4 L. Ed. 2d 1669, 80 S. Ct. 1437 (1960).

The *Turner* court stated that the rule is neither to be imposed in a vacuum nor administered mechanically. Rather, it should be applied in light of its deterrent purpose. See *United States v. Calandra*, 414 U.S. at 348; *United States v. Winsett*, 518 F.2d 51 (9th Cir. 1975). Any extension of the rule beyond its traditional applicability in criminal proceedings is warranted only where the use of the remedy would result in appreciable deterrence of police misconduct. *United States v. Leon*, 468 U.S. 897, 909, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984). Thus, in deciding whether to extend the exclusionary rule, the likelihood that the rule's deterrent effect will be achieved should be balanced against the cost of withholding reliable information from the truth-seeking process. *Illinois v. Krull*, 480 U.S. 340, 347, 94 L. Ed. 2d 364, 107 S. Ct. 1160 (1987); *United States v. Calandra*, 414 U.S. at 351-52.

The question in *Turner* was whether evidence seized from a probationer through a search warrant that contained false information should be barred by the exclusionary rule. The *Turner* court decided that, generally, evidence illegally seized from a probationer is not barred from a probation revocation proceeding by the exclusionary rule. The bare fact that the officer or officers acting unlawfully knew of the defendant's probationary status is insufficient to create an exception thereto. It concluded, however, that an exception may be warranted if the court finds, under the totality of the circumstances, that the police misconduct was so

egregious that its deterrence outweighs the court's need for information. 257 Kan. at 27.

K.S.A. 22-2508 states that "[a]ll necessary and reasonable force may be used to effect an entry into any building or property or part thereof to execute a search warrant." The police executed a search warrant at McCloud's residence just after midnight by throwing a "flash bang" through a side window as a diversionary tactic and entering the residence through the front door. A flash bang is an explosive device which makes a bright flash and a loud noise and is designed to startle a building's occupants. An officer testified at trial that the police chose this manner of executing the search warrant because of the serious nature of McCloud's crimes, because McCloud had used a firearm in the commission of the robberies, and for the safety of the officers executing the search warrant and the surrounding neighborhood. McCloud was arrested without incident.

Prior to our discussion of this issue, it is interesting to note that the language of K.S.A. 22-2405(3) dealing with force that can be used in effecting an arrest is similar to that used in K.S.A. 22-2508 dealing with execution of a search warrant. K.S.A. 22-2405(3) provides that all necessary and reasonable force may be used to effect an entry upon any building or property or part thereof to make an authorized arrest. Neither statute states the degree of force an officer may use. K.S.A. 1993 Supp. 21-3215, which provides that standard, states that a law enforcement officer making a lawful arrest need not retreat or desist from making a lawful arrest because of resistance or threatened resistance to the arrest. An officer is justified in the use of any force which such officer reasonably believes to be necessary to effect the arrest or to defend the officer's self from bodily harm while making the arrest. The officer is justified in using force likely to cause death or great bodily harm if the officer reasonably believes that such force is necessary to prevent the arrest from being defeated by resistance, or the suspect is attempting to escape by use of a deadly weapon.

This court previously considered whether the evidence seized should be excluded when an officer used unnecessary and un-

reasonable force in executing a search warrant. See *State v. Tyler,* 251 Kan. 616, 633-34, 840 P.2d 413 (1992). In that case, a team of officers involved in a narcotics investigation were executing a search warrant. Just as the officers opened the screen door, someone inside opened the inner door. Without knocking, the officers entered the residence through the open door, shouting to identify themselves. In his motion to suppress the evidence seized, Tyler contended that the officers should have announced their presence, authority, and purpose prior to entering the residence. Tyler argued that the officers used excessive force when executing the search warrant in violation of the Fourth Amendment and § 15 of the Kansas Constitution Bill of Rights.

The *Tyler* court noted that much of the defendant's argument was based upon the United States Supreme Court decision in *Sabbath v. United States,* 391 U.S. 585, 20 L. Ed. 2d 828, 88 S. Ct. 1755 (1968). The *Tyler* court observed that in *Sabbath* the customs agents were subject to 18 U.S.C. § 3109 (1988), which allowed an officer to break into a house to execute a search warrant "if, after notice of his authority and purpose, he is refused admittance." In *Sabbath,* United States customs agents entered the defendant's apartment by opening the closed but unlocked door. The United States Supreme Court found the custom agents' entrance violated § 3109 and that no exception to the statute was justified, and suppressed admission of the evidence.

In determining if *Sabbath* applied to the states, the *Tyler* court observed that in *Ker v. California,* 374 U.S. 23, 34, 10 L. Ed. 2d 726, 83 S. Ct. 1623 (1963), the United States Supreme Court announced that states could develop their own rules governing search and seizure as long as those rules follow the constitutional prohibition against unreasonable searches and seizures. In *Ker,* a law enforcement officer failed to knock and announce because he believed that Ker possessed narcotics that could easily be destroyed and the officer believed that Ker was expecting him. The Court found the officer's conduct was reasonable under the circumstances and did not violate the Fourth Amendment. 374 U.S. at 40-41.

The *Tyler* court concluded that although searches must be reasonable, as required by the Fourth Amendment and § 15 of the

Kansas Constitution Bill of Rights, 18 U.S.C. § 3109 does not apply to the states. It noted that in Kansas, K.S.A. 22-2508 allows all necessary and reasonable force to be used to effect an entry into any building or property or part thereof to execute a search warrant. It determined that the Kansas Legislature has not adopted a knock and announce rule. After noting that the officers knew a bodyguard who carried a hammer would be at the front door and that another person in the house was known to carry a gun, the *Tyler* court held that the execution of the search warrant was reasonable. 251 Kan. at 634-35.

McCloud attempts to distinguish *Tyler* by arguing that he was not a narcotics suspect, the manner in which he used the firearm in the robberies did not endanger the victims, and there was no indication that evidence would have been destroyed if the police had knocked and announced their presence. McCloud's assertion that he never scared his victims with his display of a firearm during a robbery is a misstatement of the facts.

The *Tyler* court did not decide whether the exclusionary rule applies to an officer's use of excessive force in executing a search warrant. The question of whether it is necessary to apply an exclusionary rule is determined by weighing the extent to which its application will deter law enforcement officials from using excessive force in executing a valid search warrant against the extent to which its application will deflect the truth-finding process, free the guilty, and generate disrespect for the law and the administration of justice.

We conclude that the exclusionary rule should not apply in this case. We believe that the right to bring a civil action against an officer is usually a sufficient deterrent to an officer's use of unreasonable force. See *Dauffenbach v. City of Wichita*, 233 Kan. 1028, 667 P.2d 380 (1983) (party has the right to bring a civil action against law enforcement officers who use unreasonable force in making an arrest).

In a separate argument, McCloud asserts that the police committed an "overseizure" when executing the search warrant by seizing items that were not listed in the warrant. He admits in his pro se brief that the police officers were executing a valid

search warrant and had the right to be in his residence and seize items particularly listed in the warrant and items that were in plain view. He does not state which items admitted into evidence he objects to. McCloud failed to object to the introduction of the evidence at trial. McCloud's contention does not merit consideration.

## Lesser Included Offense Instruction

McCloud claims that the trial court erred in failing to instruct the jury on theft by threat as a lesser included crime of aggravated robbery. This court has recently addressed this issue and held that "[t]heft by threat, or extortion, is not a lesser included offense of robbery under the provisions of K.S.A. 21-3107(2)(a) or (d)." *State v. Blockman,* 255 Kan. 953, Syl. ¶ 4, 881 P.2d 561 (1994). See *State v. Rader,* 256 Kan. 364, 885 P.2d 1222 (1994). The rationale of *State v. Blockman* controls this issue.

## Burden of Proof

McCloud argues that the trial court erred in instructing the jury concerning the State's burden of proof. The trial court instructed the jury:

"The State has the burden of proving the defendant is guilty. The defendant is not required to prove he is not guilty. You must assume the defendant is not guilty unless the evidence convinces you of the defendant's guilt.

"Your determination should be made in accordance with these instructions, and this is the test you should apply: If you have no reasonable doubt as to the truth of any of the claims made by the State, you should find the defendant guilty. If you have reasonable doubt as to any of the claims made by the State, you *should* find the defendant not guilty." (Emphasis added.)

McCloud did not object to this instruction at trial. No party may assign as error the giving or failure to give an instruction unless he or she objects thereto before the jury retires to consider its verdict stating distinctly the matter to which he or she objects and the grounds of his or her objection, unless the instruction is clearly erroneous. K.S.A. 22-3414(3). See *State v. Hammond,* 251 Kan. 501, Syl. ¶ 4, 837 Kan. 816 (1992).

McCloud contends that the trial court's use of the emphasized word "should" as opposed to "must" is clearly erroneous. McCloud argues that the words "should" and "must" have two

different meanings and that the trial court failed to follow PIK Crim. 3d 52.02 and the statutory language of K.S.A. 21-3109. McCloud admits that the case of *State v. Stuart and Jones*, 223 Kan. 600, 575 P.2d 559 (1978), controls the issue, but submits that the case was wrongly decided and requires re-examination.

In *State v. Stuart and Jones*, 223 Kan. at 603-04, this court considered the identical arguments that McCloud advances. In that case, the defendants argued that the jury should have been instructed it "must" find the defendants not guilty if there is reasonable doubt, rather than that it "should" find the defendants not guilty if there is reasonable doubt. The defendants further argued that the word "must" was mandatory and complied with the statutory language of K.S.A. 21-3109, while "should" is permissible and does not. This court noted that in *State v. Connor*, 74 Kan. 898, 87 Pac. 703 (1906), the court held that the word "should" as used in instructions conveys a sense of duty and obligation and could not be misunderstood by a jury. McCloud fails to establish that this court erroneously decided *Stuart and Jones*.

### Intent Instruction

McCloud argues that the trial court failed to correctly instruct the jury regarding criminal intent. McCloud emphasizes that criminal intent is an essential element of every crime and contends that the intent instruction given by the trial court was erroneous, offended due process, and left an essential element of the criminal accusations undecided. McCloud did not object to the instruction at trial.

The trial court instructed the jury as to general criminal intent. The instruction given at trial was a direct quote of PIK Crim. 3d 54.01-A:

"In order for the defendant to be guilty of the crime charged, the State must prove that his conduct was intentional. Intentional means willful and purposeful and not accidental.

"Intent or lack of intent is to be determined or inferred from all the evidence in the case."

McCloud fails to note that K.S.A. 21-3201(1) also states: "Criminal intent may be established by proof that the conduct of the accused person was willful or wanton. Proof of willful conduct

shall be required to establish criminal intent." K.S.A. 21-3201(2) further provides that willful conduct is conduct which is purposeful and intentional and not accidental. Thus, the instruction given necessarily required the jury to find that McCloud possessed criminal intent. Moreover, the court specifically enumerated the intent element in each of the 12 instructions for aggravated robbery.

### Meaningful Access/Trial Transcript

The Appellate Defender's office was appointed to represent McCloud at his request. That order states: "It is further ordered that upon completion of the record on appeal the Clerk of the District Court shall provide such record to the Appellate Defender's Office." See K.S.A. 22-4505 and K.S.A. 22-4509. Several requests were made by the Appellate Defender's office for transcripts of certain proceedings and corresponding certificates of completion. The Appellate Defender's office filed a brief on behalf of McCloud which includes a 10-page statement of facts and cites to the record.

Subsequent to the appointment of the Appellate Defender, McCloud filed motions to be allowed to file a pro se brief and for a trial transcript. McCloud attached a draft of an order to his motion for a trial transcript which mandated that all trial court records in his case be sent to him. This court granted McCloud's motion to file a pro se brief and denied his request for the trial transcript. McCloud contends that this court improperly denied his motion for trial transcript, thereby making it impossible for him to compose a detailed statement of the facts necessary to support his pro se arguments. McCloud argues that denial of his transcript precludes him from exhausting his state remedies and therefore denies him access to the federal courts.

McCloud's appellate counsel had full access to the trial transcript. McCloud cites no authority for the proposition that an additional copy of the record should have been given to him. Furnishing a transcript required for appellate review of a criminal conviction free of charge for an indigent defendant is constitutionally and statutorily required. When the transcript is provided

to the indigent defendant's counsel, the indigent defendant is not entitled to an additional copy of the transcript.

Affirmed.

ABBOTT, J., concurring: With reluctance, I concur in the result. The defendant in this case was 37 years of age at the time of the crimes and had no prior criminal record or criminal history. He was given a controlling term of 96 years to life. As I read the sentencing guidelines in effect at this time, the *maximum* term he could be given would be 17 years, a difference of 79 years. This shocks my sense of fairness, but under this court's abuse of discretion decisions I am unable to say the trial judge abused his discretion.

SIX, J., joins the foregoing concurring opinion.