578 P.2d 342

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Alex TRUJILLO, Defendant-Appellant.**

**No. 3347.**

Court of Appeals of New Mexico.

April 11, 1978.

Writ of Certiorari Denied May 9, 1978.

Stephen D. Pfeffer, Santa Fe, for defendant-appellant.

Toney Anaya, Atty. Gen., Paquin M. Terrazas, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

Defendant was convicted of two counts of aggravated battery, two counts of aggravated assault and two counts of bribery of a witness. The bribery convictions were based on threatening a witness. See § 40A–24–3(C), N.M.S.A. 1953 (2d Repl. Vol. 6). We discuss: (1) statutory misreference in the indictment; (2) denial of motions to suppress; and (3) the meaning of "use" in the firearm enhancement statute.

*Statutory Misreference*

The two counts of aggravated battery charged aggravated battery on July 2, 1977 in that defendant unlawfully applied force to the victim (there is a different victim for each count), with intent to injure by inflicting great bodily harm by use of a loaded firearm (a shotgun). Each count refers to the firearm enhancement statute, § 40A–29–3.1(A), N.M.S.A. 1953 (2d Repl. Vol. 6, Supp. 1975).

Each count also refers to § 40A–2–5 rather than § 40A–3–5, N.M.S.A. 1953 (2d Repl. Vol. 6). Section 40A–2–5, supra, defines the crime of "assisting suicide". Section 40A–3–5, supra, defines the crime of aggravated battery.

Defendant moved to dismiss because of the statutory misreference and claims that denial of this motion was error. The con-

tention is frivolous. The statutory misreference was a patent typing error. Such did not provide a basis for dismissal. Rule of Crim.Proc. 7(a); see *State v. Covens,* 83 N.M. 175, 489 P.2d 888 (Ct.App.1971); *State v. Lucero,* 79 N.M. 131, 440 P.2d 806 (Ct. App.1968).

*Motions to Suppress*

The crimes were committed on July 2nd and 3rd, 1977. Defendant was apprehended on July 9, 1977. The evidence shows that defendant was advised of his constitutional rights. Defendant stated that he understood his rights and did not have anything to say.

Officer Filip had been talking to a resident of a nearby house. Upon his return to where defendant was standing, handcuffed, Officer Filip asked defendant "who the car belonged to." Defendant said he did not know. Officer Filip said "he was going to have the car towed away, since nobody seemed to know who it belonged to". Defendant "blurted out quickly, no, don't have it towed away, I borrowed that car." Officer Filip asked defendant if there was any personal property he would like, from the car, and defendant answered, "yes, he would." The evidence is that it is standard practice to afford an arrested individual the opportunity to remove personal belongings from the arrestee's car in order to cut down on liability claims against officers once the police take possession of a car.

While walking to the car, defendant asked "if you find anything in that car, can it be used as evidence against me?" Officer Filip stated, "yes, it can. . . . [I]f you would like, I can obtain a search warrant, if necessary." Defendant replied: "that won't be necessary. . . . I have got a shotgun in the back seat. Let's get my things." The officers removed various things from the car at defendant's request —shoes, a suit and shirt, a Levi jacket, some money and a shaving kit. Upon removal of the jacket from the back seat, the shotgun was revealed.

 Defendant moved to suppress his oral statement concerning the shotgun on the basis that officers were questioning defendant after he had stated that he had nothing to say. Defendant moved to suppress the shotgun on the basis that its discovery resulted from Officer Filip's remark that he could obtain a search warrant, if necessary. Both motions were properly denied.

Although defendant was in custody, the circumstances here do not show any improper interrogation by police officers in violation of defendant's constitutional rights. See *State v. Bidegain,* 88 N.M. 466, 541 P.2d 971 (1975). Defendant was being given the opportunity to remove his personal belongings from the car. Defendant raised the question of evidence against him and in response, the officer stated a search warrant could be obtained if necessary. *State v. Lewis,* 80 N.M. 274, 454 P.2d 360 (Ct.App.1969) is not applicable to these facts. Defendant then volunteered the remark about the shotgun, which was found when defendant's belongings were being removed from the car. See *State v. Greene,* 91 N.M. 207, 572 P.2d 935 (1977). A search was not involved; the shotgun was properly seized when it came to view upon removing the jacket at defendant's request.

*Meaning of "Use"*

Defendant received an enhanced sentence for each of the aggravated batteries and for each of the aggravated assaults. Section 40A–29–3.1(A), supra, provides for enhancement of the sentences when "a firearm was used in the commission of" the felonies in this case.

Defendant contends an enhanced sentence for one of the aggravated batteries was improper. This issue was raised by his requested, but refused, instruction, which read: "A crime is committed with a firearm when the firearm is used as such and not as a club." There is evidence that defendant clubbed one of the battery victims during a struggle for the gun. Defendant asserts the Legislature intended to increase the sentence only "when a firearm is 'used' in accordance with its intended purpose, the shooting of a projectile or placing persons in fear of the shooting of a projectile, in order to accomplish a crime."

*People v. Chambers,* 7 Cal.3d 666, 102 Cal.Rptr. 776, 498 P.2d 1024 (1972) states:

> By employing the term "uses" instead of "while armed" the Legislature requires something more than merely being armed. . . . One who is armed with a concealed weapon may have the potential to harm or threaten harm to the victim and those who might attempt to interrupt the commission of the crime . . . Although the use of a firearm connotes something more than a bare potential for use, there need not be conduct which actually produces harm but only conduct which produces a fear of harm or force by means or display of a firearm in aiding the commission of one of the specified felonies. "Use" means, among other things, "to carry out a purpose or action by means of," to "make instrumental to an end or process," and to "apply to advantage." . . . The obvious legislative intent to deter the use of firearms in the commission of the specified felonies requires that "uses" be broadly construed.

*People v. Reaves,* 42 Cal.App.3d 852, 117 Cal.Rptr. 163 (1974) states:

> [T]he intentional firing of the gun is use of the firearm. The display of the gun in a menacing manner as a means of accomplishing a robbery or the employment of the gun to strike or "pistol whip" the victim is certainly "use" of the gun in the commonly accepted definition of that term. Because either such "use," i. e., the menacing display of or striking the victim with the gun carries the ever-dangerous potential of a discharge of the firearm, both such "uses" are properly included . . . . .

Similarly to the California courts, we have distinguished between armed with a firearm and use of a firearm. *State v. Duran,* 91 N.M. 38, 570 P.2d 39 (Ct.App. 1977); see *State v. Wilkins,* 88 N.M. 116, 537 P.2d 1012 (Ct.App.1975). The obvious intent of the New Mexico Legislature was to deter the use of firearms in committing felonies; consistent with that intent, "use" should be broadly construed. *People v. Chambers,* supra. Defendant used the firearm within the meaning of § 40A–29–3.-1(A), supra, when he used the shotgun as a club in committing aggravated battery. *People v. Reaves,* supra. The trial court properly refused defendant's requested instruction.

The judgment and sentences are affirmed.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.