(891 P.2d 1118)
No. 71,264

STATE OF KANSAS, *Appellee,* v. TERRY GEORGE, *Appellant.*

Opinion
filed March 10, 1995.

*Hazel Haupt,* assistant appellate defender, and *Jessica R. Kunen,* chief appellate defender, for appellant.

*Robert Forer,* county attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before BRAZIL, P.J., GERNON, J., and DAVID J. KING, District Judge, assigned.

BRAZIL, J.: Terry George appeals the district court's denial of his request for conversion under the sentencing guidelines.

George struck his ex-wife in the face three or four times, hit her on the head with a handgun, and stabbed her in the leg with a "Rambo-style serrated knife." Pursuant to a plea agreement, George pled guilty to aggravated battery as defined in K.S.A. 21-3414(b), a class C felony. The State dismissed a charge of aggravated assault. George was sentenced to a term of 5 to 15 years, which the court later modified to 4 to 15 years. He committed the crime and was sentenced prior to July 1, 1993.

The Department of Corrections (DOC) submitted a sentencing guidelines report in October 1993 which indicated that the aggravated battery conviction constituted a severity level 7 offense. The report stated that George had one prior misdemeanor battery conviction, resulting in criminal history category I on the sentencing grid. The report stated that the guidelines sentence was 18 months. The report concluded that although a 7-I classification would otherwise merit sentence conversion, George was not eligible for retroactive application of the guidelines because he used a firearm in the commission of the crime.

George filed an objection to the report and requested a hearing. At the hearing, George argued that he did not use a firearm in the commission of aggravated battery. The court agreed that a firearm was not used in the commission of the offense but pointed out that the report erroneously categorized the aggravated battery as severity level 7. The court stated that the severity level should be 4, making George ineligible for sentence conversion. The court denied George's request for sentence conversion.

George argues that the district court erred in classifying his offense as a severity level 4 aggravated battery under the new

statute. Statutory interpretation is a question of law and is subject to this court's unlimited review. *State v. Williams,* 19 Kan. App. 2d 903, 904, 878 P.2d 854 (1994).

George was charged with aggravated battery pursuant to K.S.A. 21-3414, which states: "Aggravated battery is the unlawful touching or application of force to the person of another with intent to injure that person or another and which . . . (b) [c]auses any disfigurement or dismemberment to or of his person." The aggravated battery statute was amended in 1993. Under 21-3414(a), aggravated battery is defined in part as:

"(1)(A) Intentionally causing great bodily harm to another person or disfigurement of another person; or

(B) intentionally causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted; or

(C) intentionally causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." K.S.A. 1993 Supp. 21-3414(a).

Aggravated battery under (a)(1)(A) is a severity level 4 person felony; the other two classifications are severity level 7 person felonies. K.S.A. 1993 Supp. 21-3414(b). The court translated the offense into subsection (a)(1)(A) because George pled guilty to K.S.A. 21-3414(b), intentionally applying force causing disfigurement of another person.

George pled guilty to a crime consisting of two elements: intent to injure and causing disfigurement or dismemberment. The charging instrument stated that George "did . . . willfully apply force to the person of another . . . with the intent to injure that person, and which did cause . . . disfigurement or dismemberment to or of said person in violation of K.S.A. 21[-]3414(b)." K.S.A. 1993 Supp. 21-3414(a)(1)(A), however, contains different elements: intentionally causing great bodily harm or intentionally causing disfigurement. The charging document does not mention either element.

In *State v. Houdyshell,* 20 Kan. App. 2d 90, 95, 884 P.2d 437 (1994), the Houdyshells were charged and convicted of unlawfully applying force to the victim " 'with the intent to injure that person

and which inflicted great bodily harm upon him or was done in a manner whereby great bodily harm, disfigurement, dismemberment, or death could be inflicted.'" The trial judge stated that he remembered the cases and concluded that the evidence showed the Houdyshells intentionally caused great bodily harm to the victim. The trial court then translated the offense into a severity level 4 under the new aggravated battery statute.

This court reversed, stating that severity level 4 aggravated battery under the new statute included an element not charged: intent to commit great bodily harm. This court concluded that since the charging document is a jurisdictional instrument upon which an accused stands trial, the court does not have jurisdiction to sentence a person for a crime consisting of elements not alleged in the charging document. 20 Kan. App. 2d at 96.

*Houdyshell* might be distinguished by the fact that the court calculated the guidelines sentence for purposes of original sentencing pursuant to K.S.A. 1993 Supp. 21-4724(f), since the crime was committed prior to July 1, 1993, and the Houdyshells were sentenced after July 1, 1993. There was no DOC report and no conversion hearing. Further, the Houdyshells did not plead guilty, but had a jury trial on the charges.

*Houdyshell* is otherwise on point. George was not charged with intent to disfigure or intent to inflict great bodily harm. He was charged with intent to injure his victim, and the injury caused disfigurement. His eligibility for sentence conversion cannot be calculated based on a crime for which he was not charged or convicted. Further, George's offense does not fit the definition in 21-3414(a)(1)(C) because it lacks the element of making physical contact in a rude, insulting, or angry manner. George's offense can only translate into the definition in 21-3414(a)(1)(B), which requires an intent to cause bodily harm inflicted in a manner that could cause disfigurement or death. This is a severity level 7 offense. George is thus eligible for sentence conversion. See K.S.A. 1993 Supp. 21-4724(c)(1).

George alternatively argues that his offense translates into one of the definitions of reckless aggravated battery under K.S.A. 1993 Supp. 21-3414(a)(2). Reckless aggravated battery is either a se-

verity level 5 or 8 offense. K.S.A. 1993 Supp. 21-3414(b). This argument is without merit. The charging document plainly states that George "willfully" applied force to his victim "with the intent to injure that person." Intentional acts are willful and not accidental, while reckless acts are done merely with a "realization of the imminence of danger" and an unjustifiable disregard for it. K.S.A. 1993 Supp. 21-3201(b) and (c). George's crime clearly cannot be construed as any form of reckless aggravated battery.

The State argues that if this court concludes the district court erred in determining the severity level of George's offense, denial of the conversion could still be upheld on the basis that George used a firearm in the commission of the aggravated battery. The district court held that George did not use a firearm, but that since he committed a severity level 4 offense, his sentence would not be converted. In essence, the State argues that the district court correctly denied conversion, but erred in holding that George did not use a firearm.

K.S.A. 1993 Supp. 21-4704(h) states that when a firearm is used to commit aggravated assault or aggravated battery, the offender's sentence shall be presumed imprisonment. The State and the district court coupled this provision with K.S.A. 1993 Supp. 21-4724(b)(1), which states in part that

"persons who committed crimes which would be classified in a presumptive nonimprisonment grid block on either sentencing grid, [or] in grid blocks 5-H, 5-I or 6-G of the nondrug grid . . . and were sentenced prior to July 1, 1993, shall have their sentences modified according to the provisions specified in the Kansas sentencing guidelines act."

The State takes these provisions to mean that if a person uses a firearm in the commission of aggravated battery, he or she is not eligible for retroactive application of the guidelines. This is not supported by the language of the statute. The provision for changing the presumptive sentence from nonimprisonment to imprisonment for use of a firearm in the commission of certain crimes does not alter the legislature's direction of conversion set out in K.S.A. 1993 Supp. 21-4724(b)(1). *State v. Sidders,* 20 Kan. App. 2d 405, Syl. ¶ 2, 888 P.2d 409 (1995).

It is clear that the firearm issue does not preclude George's eligibility for retroactive application of the guidelines. We must

next consider whether the trial court erred in determining that a firearm was not used in the commission of an aggravated battery.

The threshold question is what information is available to the trial court to determine whether a firearm was used in the commission of a crime under K.S.A. 1993 Supp. 21-4704(h)? This is a matter of first impression. In the context of determining retroactive applicability of the guidelines, this court has been reluctant to go beyond the well-pleaded facts in the charging instrument as set out in *Houdyshell*, 20 Kan. App. 2d at 95, and the findings of fact in the journal entry.

Having determined that George is entitled to retroactive application of the guidelines, we see no valid reason to prevent the trial court from considering the stipulated facts underlying the guilty plea. We hold that when a defendant pleads guilty or nolo contendere, the stipulated facts underlying the plea may be used by the trial court, in addition to the well-pleaded facts in the charging instrument and findings of fact in the journal entry, to determine whether the defendant used a firearm in the commission of a crime as set out in K.S.A. 1993 Supp. 21-4704(h).

Neither the charging document (after the dismissal of the aggravated assault charge) nor the journal entry of sentencing mentions the use of a firearm in the commission of the crime. The State offered a factual basis for the guilty plea at the hearing. The State noted that George struck his victim on the head with a handgun. George stipulated to the facts. The gun is also mentioned in the presentence investigation report.

The DOC report stated that although George was otherwise eligible for sentence conversion, his sentence could not be converted because he used a firearm in the commission of the aggravated battery. George argued that he did not use a firearm in the commission of that crime. The court noted that the aggravated assault charge, which was dismissed, involved a firearm in that George pointed a gun at his victim's head. The district court agreed with George, stating that "[t]he aggravated battery was committed with a knife which caused a disfigurement." The court

concluded, however, that George was still not eligible for sentence conversion because he committed a severity level 4 battery.

Because the case was submitted to the trial court on stipulated facts, we have the same opportunity as the trial court to consider the evidence and determine de novo what the facts establish. *Shade v. Wheatcraft Industries, Inc.*, 248 Kan. 531, 536, 809 P.2d 538 (1991). George stipulated to the fact that he struck the victim on the head with a handgun. Contrary to the finding of the trial court, we find that the stipulated facts support a finding that a firearm was present in the commission of the aggravated battery.

Finally, we must determine whether a firearm was "used" during the commission of the aggravated battery as contemplated in K.S.A. 1993 Supp. 21-4704(h). Although this question has, to our knowledge, not yet been considered in the context of 21-4704(h), we can benefit from looking at cases involving K.S.A. 1993 Supp. 21-4618, as well as decisions from other states.

K.S.A. 1993 Supp. 21-4618 states in pertinent part:

"(a) Except as provided in subsection (c), probation, assignment to a community correctional services program or suspension of sentence shall not be granted to any defendant who is convicted of the commission of . . . any crime set out in article 34 of chapter 21 of the Kansas Statutes Annotated *in which the defendant uses any firearm in the commission thereof* and such defendant shall be sentenced to not less than the minimum sentence of imprisonment authorized by law for that crime." (Emphasis added.)

The intent of the legislature in its enactment of 21-4618 has been stated a number of times:

"The legislature in 1976 enacted K.S.A. 21-4618 because of public concern over the increased number of crimes involving the use of firearms. The imposition of a mandatory minimum sentence where a firearm is used in the commission of specified crimes was a legitimate legislative effort to deter the use of a firearm." *State v. Coley*, 236 Kan. 672, 674, 694 P.2d 479 (1985).

"When 21-4618 was being considered in legislative committee the committee reports indicate the committee members felt that this act had at least two purposes: (1) it would deter the criminal from using firearms to commit crimes, and (2) by reducing the number of crimes committed with firearms, it would save victims of such crimes from injuries and death from firearms." *State v. Pelzer*, 230 Kan. 780, 781-82, 640 P.2d 1261 (1982).

The court has considered what constitutes "use" of a firearm as well. In *State v. DeCourcy*, 224 Kan. 278, 281, 580 P.2d 86

(1978), the court stated: "In our judgment, for the statute to be applicable, the state must establish, and the sentencing court must find, that the firearm was an instrumentality of the crime." In a robbery, the court held that the State must show that the firearm was an instrument of force used to overcome the will of the victim. The court in *DeCourcy* also concluded that the court may not apply the statute when sentencing an unarmed accomplice. 224 Kan. at 281.

In *State v. Deutscher*, 225 Kan. 265, 273, 589 P.2d 620 (1979), the court held that an unloaded weapon used in an assault on a law enforcement officer is a firearm for purposes of the statute. In *State v. Harrison*, 228 Kan. 558, 561, 618 P.2d 827 (1980), the court held that Harrison used a firearm when she raised her shirttail during a robbery exhibiting what appeared to be the handle of a gun and threatened to shoot the clerk. The court rejected Harrison's argument that since she did not fully exhibit the gun during the robbery, she did not use a firearm under the statute. 228 Kan. at 561. In *State v. Robinson*, 10 Kan. App. 2d 135, 136, 694 P.2d 482 (1985), this court held that the "use" of the firearm need not be intentional to invoke the statute.

In *State v. Thompson*, 3 Kan. App. 2d 426, 596 P.2d 174, *rev. denied* 226 Kan. 793 (1979), the defendant entered a store with another man, both displaying weapons. Thompson tried to fire his gun at the clerk. The gun misfired, so his companion fired and hit the clerk. Thompson was charged, among other things, with aiding and abetting aggravated battery. The court noted the State's argument that Thompson's actions with the gun operated as a signal to his companion to shoot the clerk. This court held that since Thompson displayed, pointed, and attempted to fire his gun, he "used" a firearm for purposes of the statute. 3 Kan. App. 2d at 434-35.

The appellate courts in this state have not directly passed on the question of whether a gun used as a club to commit aggravated battery constitutes use of a firearm under the statute. The question was noted but not addressed in *State v. Kleber*, 2 Kan. App. 2d 115, 119, 575 P.2d 900, *rev. denied* 225 Kan. 846 (1978), because the parties failed to brief it.

This court again by-passed the issue in *State v. Adams*, 12 Kan. App. 2d 191, 737 P.2d 876 (1987). Adams pulled a gun and threatened to shoot or pistol whip the victim. Adams beat the victim on the arms and head with the gun and cocked it several times, threatening to shoot the victim. At trial, Adams admitted to striking the victim with a gun, but argued that the gun was merely a Daisy Model 57 which fired plastic pellets. Adams was convicted of aggravated assault and aggravated battery and sentenced under the statute.

On appeal, Adams argued that the Daisy was not a firearm under the statute. This court noted that there was no evidence of how the plastic pellet was discharged from the Daisy and concluded that upon this court's physical inspection of the gun, there was no evidence that the Daisy met the test set out in *State v. Davis*, 227 Kan. 174, 605 P.2d 572 (1980). This court held that the sentencing court's determination that a firearm was used in the commission of the offenses was not supported by substantial competent evidence. 12 Kan. App. 2d at 196. This court did not address the question of whether a gun used as a club constitutes "use" of a firearm.

One Kansas case addresses the use of a firearm in the context of aggravated battery where the gun was *not* used to fire a bullet into the victim. In *State v. Smith*, 232 Kan. 284, 654 P.2d 929 (1982), Smith, armed with a rifle, forced his way into a residence through a second floor balcony. A man in the room fled to retrieve his own gun. Smith followed and, upon meeting the man, struggled with him for possession of the man's shotgun. The two ended up on a balcony overlooking the family room. Still fighting for possession of the shotgun, Smith " 'gave a might[y] heave,' " causing the man to fall over the balcony railing to the brick floor below, causing various injuries. 232 Kan. at 287.

Smith was convicted of aggravated battery and other charges. On appeal, Smith argued that the court erred in sentencing him under the firearm statute because he did not "use" a firearm as contemplated by the statute. The court did not agree. The court stated: "Defendant's 'might[y] heave' on the firearm is what pulled Mr. Coulter over the railing. . . . Clearly under the cir-

cumstances herein the rifle was the instrumentality of the aggravated battery and was 'used' within the meaning of the mandatory sentencing statute." 232 Kan. at 289.

*Smith* is a clear statement by the Supreme Court that use of a gun in an aggravated battery is not limited to firing it for purposes of the statute. If using a gun to push someone over a railing is use of a firearm, it follows that hitting someone with a gun—a more direct utilization of the gun—is also a contemplated use.

Another state has specifically addressed the issue of a gun used as a club. In *State v. Trujillo*, 91 N.M. 641, 643, 578 P.2d 342 (Ct. App. 1978), the New Mexico Court of Appeals considered a state statute which provided for enhancement of sentences when " 'a firearm was used in the commission of' " certain felonies. There was evidence at trial that Trujillo clubbed one of his victims with a gun. Trujillo requested but did not receive an instruction stating that "use" of a firearm did not include its use as a club.

The court considered two California cases interpreting "use" of a firearm. In *People v. Chambers*, 7 Cal. 3d 666, 102 Cal. Rptr. 776, 498 P.2d 1024 (1972), the court considered the meaning of "use" of a firearm under a sentencing enhancement statute in the context of robbery. The court noted the dictionary definition of use, stating: " 'Use' means, among other things, 'to carry out a purpose or action by means of,' to 'make instrumental to an end or process,' and to 'apply to advantage.' " The court concluded that "[t]he obvious legislative intent to deter the use of firearms in the commission of the specified felonies requires that 'uses' be broadly construed." 7 Cal. 3d at 673.

In *People v. Reaves*, 42 Cal. App. 3d 852, 117 Cal. Rptr. 163 (1974), the court again considered the "use" of a firearm in the context of a robbery. In that case, the court noted the pattern jury instruction on the use of a firearm. The instruction stated: " 'The term "used a firearm" includes not only an intentional discharge thereof but also the use thereof as an object with which to hit or strike or display in a menacing manner.' " 42 Cal. App. 3d at 856. The court explained the intent of the legislature as follows:

"The desire of the Legislature to prevent death and injury as a result of the involvement of firearms in the commission of crime is manifest from the various provisions for increased punishment for crimes where firearms are in some way involved. *The underlying intent of the Legislature is to deter persons from creating a potential for death or injury resulting from the very presence of a firearm at the scene of a crime. . . .*

. . . .

" . . . The display of the gun in a menacing manner as a means of accomplishing a robbery or the employment of the gun to strike or 'pistol whip' the victim is certainly 'use' of the gun in the commonly accepted definition of that term. Because either such 'use,' i.e., the menacing display of or *striking the victim with the gun carries the ever-dangerous potential of a discharge of the firearm,* both such 'uses' are properly included." (Emphasis added.) 42 Cal. App. 3d at 856-57.

The New Mexico court concluded that "[t]he obvious intent of the New Mexico Legislature was to deter the use of firearms in committing felonies" and thus the concept of "use" should be broadly construed. The court held that a gun used as a club constitutes use of a firearm under the sentencing statute and Trujillo's instruction was properly denied. *Trujillo,* 91 N.M. at 644.

Within the context of K.S.A. 1993 Supp. 21-4704(h), we believe that the concept of "use" should be broadly construed and conclude that George used a firearm in the commission of the aggravated battery within the meaning of the statute. This is consistent with the legislative intent in Kansas to address public concern over the increased number of crimes involving firearms and with our Supreme Court's conclusion that enhancement of a sentence where a firearm is used is a legitimate effort to deter the use of a firearm. *State v. Coley,* 236 Kan. at 674.

The presumption of imprisonment for use of a firearm in the commission of a crime must apply to George's guidelines sentence. K.S.A. 1993 Supp. 21-4704(h). We are remanding the case to the trial court for a hearing on whether the presumption can be overcome under the language of subsection (h) relating to community safety interests. We note that this language is similar to that used in border box sentences under 21-4704(f)(3).

The sentencing guidelines report incorrectly states that a 7-I classification on the sentencing grid receives a sentence of 18

months. The correct medium range sentence is 12 months. K.S.A. 1993 Supp. 21-4704. On remand, the trial court is directed to correct the sentence.

Reversed and remanded with directions.