(216 P.3d 186)
No. 100,464

STATE OF KANSAS, *Appellee*, v. GABRIEL NAMBO, JR., *Appellant*.
Petition for review granted September 13, 2010.

Opinion filed September 25, 2009.

*Ryan Eddinger*, of Kansas Appellate Defender Office, for the appellant.

*Matt J. Maloney*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, for the appellee.

Before MCANANY, P.J., PIERRON and LEBEN, JJ.

PIERRON, J: Gabriel Nambo, Jr., appeals the district court's finding that he is required to register as an "offender" pursuant to K.S.A. 22-4902(a)(7) of the Kansas Offender Registration Act. We affirm.

On August 11, 2007, Herman Gallegos was driving his 2003 Chevrolet Blazer. As he approached an intersection, a Ford Explorer swerved in front of his Blazer, forcing him to stop. Three men emerged from the Explorer, and two of them, Nambo and Jose Vasquez, approached Gallegos' vehicle. Vasquez pointed a handgun at Gallegos and ordered Gallegos out of the vehicle. Gallegos and his passenger complied. Vasquez and Nambo got into the Blazer and drove away. Nambo sat in the passenger seat, and

Vasquez drove. The third man, Daniel Nambo, returned to the Explorer and drove away in the same direction as the Blazer.

Officer Williamson, a police officer on his way home after his shift, witnessed the carjacking. After notifying dispatch, Williamson followed the Explorer and Blazer. At some point, Vasquez realized that Williamson was following them and the suspects abruptly stopped their vehicles. Vasquez, Nambo, and Daniel exited the vehicles and ran towards Officer Williamson. Officer Williamson identified himself as a police officer and drew his handgun on the three approaching men. Vasquez fled through the neighborhood on foot, while Nambo fled in the Blazer and Daniel fled in the Explorer. Daniel was arrested a short time later after wrecking the Explorer.

Nambo abandoned the stolen Blazer in a nearby park. He and Vasquez, both on foot, soon met again and attempted to steal a vehicle being driven by Omar Prado-Sanchez. Vasquez pointed a handgun at Prado-Sanchez and ordered him out of his vehicle. Prado-Sanchez ignored Vasquez' demands. Vasquez fired the handgun and shattered the windshield. After Prado-Sanchez drove away, Vasquez and Nambo fled in different directions. Prado-Sanchez and his passengers received minor injuries.

Vasquez returned to the abandoned Blazer and drove around in an attempt to find Nambo and Daniel. Soon after, the police spotted Vasquez and a chase ensued ending in Vasquez' arrest. The police went to the address of the registered owner of the Explorer and while there Nambo arrived. Officer Williamson later arrived and identified Nambo as a participant in the Blazer robbery. Prado-Sanchez and his passengers also identified Nambo as one of the two men who attempted to rob them.

Vasquez confessed as charged and also to being the individual who possessed the gun throughout the entire incident. Nambo pled guilty to one count of aggravated robbery. The State conceded that Nambo never possessed the gun during the commission of the robbery. At sentencing, the State argued that Nambo was required to register as an offender under K.S.A. 22-4902(a)(7) because he had pled to a person felony (aggravated robbery) and the offense was committed with a deadly weapon. Nambo disagreed, arguing

that because he did not personally hold or use the handgun during the robbery he was not required to register. The district court reviewed 22-4902(a)(7) and determined the statute required registration "as long as there was a deadly weapon used in the commission of the felony." Accordingly, the district court ordered Nambo to register as an offender because of undisputed evidence that he participated in an armed robbery.

The district court sentenced Nambo to 68 months' imprisonment for aggravated robbery but granted a downward departure to 36 months' probation provided he successfully complete the Labette Correctional Conservation Camp.

Nambo asserts the district court erred in ordering him to register as an offender pursuant to K.S.A. 22-4902(a)(7). He argues that as an unarmed accomplice he cannot be required to register under 22-4902(a)(7). Thus, the question presented requires us to interpret and apply 22-4902(a)(7). The interpretation of a statute is a question of law over which an appellate court has unlimited review. *State v. Storey*, 286 Kan. 7, 9-10, 179 P.3d 1137 (2008).

Nambo asserts that K.S.A. 22-4902(a)(7) requires an offender to actually use a deadly weapon during the commission of a person felony. In other words, Nambo argues that because he never physically possessed the firearm during the commission of the aggravated robbery, he did not "use" a deadly weapon within the meaning of 22-4902(a)(7). K.S.A. 22-4902(a)(7) defines an offender as "any person who, on or after July 1, 2006, is convicted of any person felony and the court makes a finding on the record *that a deadly weapon was used in the commission of such person felony.*" (Emphasis added.)

Kansas appellate courts have previously addressed whether a defendant must actually use a deadly weapon during the commission of a person felony in the context of two other sentencing statutes. See *State v. DeCourcy*, 224 Kan. 278, 280-81, 580 P.2d 86 (1978) (discussing "use" of a deadly weapon under K.S.A. 1976 Supp. 21-4618); *State v. Stuart and Jones*, 223 Kan. 600, 606-07, 575 P.2d 559 (1978) (same); *State v. George*, 20 Kan. App. 2d 648, 891 P.2d 1118, *rev. denied* 257 Kan. 1094 (1995) (discussing use of a deadly weapon under K.S.A. 1993 Supp. 21-4704[h]); *State v.*

*Largent,* No. 91,435, unpublished opinion filed October 8, 2004, (same, citing K.S.A. 2003 Supp. 21-4704[h]). However, whether K.S.A. 22-4902(a)(7)—a registration statute—requires an offender to actually have used a deadly weapon during the commission of a person felony is a matter of first impression.

Nambo points to *DeCourcy* and *Largent* as support for his contention that K.S.A. 22-4902(a)(7) does not apply to an unarmed accomplice.

The *DeCourcy* court relied on its previous holding in *Stuart and Jones* in summarily ruling that K.S.A. 1976 Supp. 21-4618, predecessor to the current K.S.A. 21-4618, "applies only to a defendant personally armed with a firearm at the time the crime was committed and does not apply to an unarmed accomplice." *DeCourcy,* 224 Kan. at 281. In *Stuart and Jones,* codefendant Jones was an unarmed accomplice to an aggravated robbery. On appeal, he contended the trial court erred in refusing to consider probation or a suspended sentence, instead imposing the minimum sentence pursuant to K.S.A. 1976 Supp. 21-4618.

K.S.A. 1976 Supp. 21-4618 stated:

" 'Probation shall not be granted to any defendant who is convicted of the commission of any crime set out in article 34 of chapter 21 of the Kansas Statutes Annotated in which *the defendant used any firearm in the commission thereof* and such defendant shall be sentenced to not less than the minimum sentence of imprisonment authorized by law for that crime. This section shall apply only to crimes committed after the effective date of this act.' " (Emphasis added.) 223 Kan. at 607.

In holding that K.S.A. 1976 Supp. 21-4618 did not apply to an unarmed accomplice, the court stated:

"The term 'defendant' is used in the singular throughout the statute. At no time is the term 'defendants' used. By the same token the statute does not refer to mandatory sentencing applying to aiders and abettors, accomplices or co-conspirators. It is well understood that criminal statutes must be strictly construed against the state and in favor of the defendant. We hold that the statute applies only to the defendant personally armed with a firearm at the time the crime is committed." *Stuart and Jones,* 223 Kan. at 607.

Similarly, in *Largent,* the appellate held that the presumptive imprisonment sentencing requirement set forth in K.S.A. 2003

Supp. 21-4704(h) does not apply to an unarmed accomplice. Slip op. at 4-5. K.S.A. 21-4704(h) states: "When a firearm is used to commit any person felony, the offender's sentence shall be presumed imprisonment." In finding that 21-4704(h) does not apply to an unarmed accomplice, the *Largent* court relied almost exclusively on the holding in *DeCourcy*; the court found 21-4704(h) to be analogous to 21-4618. *Largent*, slip. op at 4-5.

Based on the interpretations of K.S.A. 21-4618 and K.S.A. 21-4704(h), Nambo argues that Kansas courts have established an unarmed accomplice rule and the legislature was presumably aware of this rule and its applications. Nambo asserts that if the legislature had intended for the term "use," as found in K.S.A. 22-4902(a)(7), to have broad effect, it would have included language broadening the scope of K.S.A. 22-4902(a)(7) to include unarmed accomplices or at least responded to the court's application of the unarmed accomplice rule by amending the language of all three statutes. Otherwise, Nambo argues that including unarmed accomplice in 22-4902(a)(7) will conflict with the court's previous applications of "use" in 21-4618 and 21-4704(h) and lead to an inconsistent and absurd result. Nambo reminds the court that if the term "use" is ambiguous, it must be construed in his favor.

Conversely, the State's position is that the plain language of K.S.A. 22-4902(a)(7) supports the district court's determination that 22-4902(a)(7) applies to unarmed accomplices. Moreover, the State distinguishes *DeCourcy* by pointing to the exact language of 21-4618 and 22-4902(a)(7) and the differences between the two statutes. The State asserts that 21-4618 "focuses on the actor (*i.e.*, a defendant must personally use a firearm), while 22-4902(a)(7) focuses on the act itself (the use of a deadly weapon) without regard to the actor. In addition, the State argues that the reference in 22-4902(a)(7) to "any person" indicates that the statute applies to aiders and abettors, accomplices, and coconspirators. The State further argues that Nambo's interpretation of 22-4902(a)(7) effectively inserts language not found in the statute and that his reliance on the *DeCourcy* court's interpretation of K.S.A. 21-4618 is misplaced because it demonstrates the legislature is capable of

adopting language to expressly limit a statute to situations in which a defendant personally uses a firearm or deadly weapon.

In response to Nambo's K.S.A. 21-4704(h) argument under *Largent*, the State argues that as an unpublished opinion, *Largent* has no precedential value and its persuasive value is negated by the fact it does not address K.S.A. 22-4902(a)(7). Furthermore, the State suggests that *Largent* was wrongly decided since K.S.A. 21-4704(h) does not contain any language indicating a defendant must personally use a firearm in order for the statute to apply.

We find the State's argument convincing as to the result it reaches. Well-established principles of statutory interpretation govern our analysis. The most fundamental of which is that the intent of the legislature governs if that intent can be ascertained. *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 77, 150 P.3d 892 (2007). In doing so, an appellate court's first task is to "ascertain the legislature's intent through the statutory language it employs, giving ordinary words their ordinary meaning." *State v. Stallings*, 284 Kan. 741, 742, 163 P.3d 1232 (2007).

"When a statute is plain and unambiguous, [appellate courts] do not speculate as to the legislative intent behind it and will not read the statute to add something not readily found in it. We need not resort to statutory construction. It is only if the statute's language or text is unclear or ambiguous that we move to the next analytical step, applying canons of construction or relying on legislative history construing the statute to effect the legislature's intent." *In re K.M.H.*, 285 Kan. 53, 79, 169 P.3d 1025 (2007), *cert. denied* 172 L. Ed. 2d 239 (2008).

The language of K.S.A. 22-4902(a)(7) defines an offender as "any person who, on or after July 1, 2006, is convicted of any person felony and the court makes a finding on the record that a deadly weapon was used in the commission of such person felony." Notably, no language restricts application of this statute to persons who personally used or possessed a deadly weapon during the commission of a person felony. The language of 22-4902(a)(7) is plain, clear, and unambiguous. It provides that if an individual is convicted of a person felony and a deadly weapon was used during the commission of that felony, regardless of whether the individual personally used or possessed the deadly weapon, then that person must register as an offender pursuant to the Kansas Offender Reg-

istration Act. Accordingly, Nambo must register as an offender because he has met all the necessary elements of K.S.A. 22-4902(a)(7): (1) He was convicted of a person felony (pled to aggravated robbery); and (2) a deadly weapon was used during the commission of that felony.

We also note our holding is supported by the principle of accomplice liability. The public policy of this State, as evidenced in both statute and case law, makes clear that an accomplice, aider, or abettor is equally as guilty as the person who committed the crime. See K.S.A. 21-3205(1); *State v. Hobson*, 234 Kan. 133, 137, 671 P.2d 1365 (1983). From this it follows that if Vasquez could be required to register as an offender pursuant to K.S.A. 22-4902(a)(7) because he physically used or possessed the gun during commission of the crime, so too could Nambo.

Since the language of K.S.A. 22-4902(a)(7) is unambiguous we could end our analysis here. However, we will address Nambo's remaining arguments in case of further review. Nambo's reliance on *DeCourcy* is misplaced. The pertinent language of the current version of K.S.A. 21-4618(a), which is almost identical to the language construed in *DeCourcy*, states: "[P]robation, assignment to a community correctional services program or suspension of sentence shall not be granted to any defendant who is convicted of the commission of . . . any crime . . . in which the defendant used any firearm in the commission thereof." Here, the phrase "in which the defendant used" is clearly limiting language that restricts application of the statute to instances only where the defendant personally used a firearm. As the State correctly points out, K.S.A. 21-4618(a) focuses on the actor—he or she must personally have used a firearm—while K.S.A. 22-4902(a)(7) focuses on the act itself—the use of a deadly weapon without regard to whether the actor personally used the firearm. K.S.A. 21-4618(a) is a different statute with different language and is clearly distinguishable from K.S.A. 22-4902(a)(7). Furthermore, under K.S.A. 21-4618(d), the statute does not apply to any crimes committed after July 1, 1993, only to crimes committed prior to that date. Therefore, Nambo's reliance on *DeCourcy* and K.S.A. 21-4618 is unpersuasive.

We also find Nambo's argument under *Largent* to be unpersuasive. *Largent* concerns a statute significantly different in focus from the one at bar. It has no bearing on the interpretation of K.S.A. 22-4902(a)(7). We make no ruling as to *Largent*.

Affirmed.