(297 P.3d 1185)
No. 106,791

STATE OF KANSAS, *Appellee*, v. CHARLES RICHARD DINNEEN, *Appellant*.

—

Opinion filed March 22, 2013.

*Matthew J. Edge*, of Kansas Appellate Defender Office, for appellant.

*Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., PIERRON, J., and LARSON, S.J.

LARSON, J.: This appeal raises the narrow question of whether Charles Richard Dinneen "used" a deadly weapon as set forth in K.S.A. 2010 Supp. 22-4902(a)(7) in a manner that requires him to register as an "offender" under the Kansas Offender Registration Act (KORA) during his violation of fleeing or attempting to elude a police officer, a severity level 9 person felony in violation of K.S.A. 8-1568(b)(1) and (c)(4).

Dinneen appeals the district court's finding that he is required to register as an offender under the KORA.

## FACTUAL FINDINGS AND PROCEDURAL HISTORY

The district court made the following factual findings when ruling on Dinneen's motion to reconsider its earlier ruling that he had used a firearm during his commission of the felony charge of fleeing and eluding a police officer:

"2. At the preliminary hearing, Nikole Kiser testified that she and the defendant had dated for approximately six years. They had recently broken up, but the defendant continued to contact her and come to her residence. On March 19, 2010 the defendant came to her residence and pulled her into the bedroom where he showed her a 9mm gun he removed from a gym bag. He told her to hold it which she refused to do. He told her she could have it when he was done with it. She understood this to mean that he was probably going to kill himself. He did not threaten her. She left the residence with her children. The children were taken to a friend's home as Nikole had plans to go. That night when she was leaving a bar with friends the defendant pulled up and questioned her as to whether a vehicle there belonged to her boyfriend. That night Nikole stayed at a friend's house.

"The following morning when Nikole went to her vehicle the defendant pulled up beside her. Nikole then attempted to return to the house but the door was locked so she returned to her vehicle. Defendant came to Nikole's van and began questioning her as to who she had been with. Defendant forcibly removed Nikole's cell phone from her so he could determine the number for her boyfriend. Defendant then told Nikole that she wasn't worthy of living and he was going to kill her in the front yard in front of her kids and everyone. He then told her to either give him her van keys while he went to his car to get the gun or follow him to his car. At that point, Nikole began honking her horn and yelling. The defendant then forcibly removed Nikole from her car and forced her into his car. As defendant went to get into the driver's side, Nikole grabbed the keys from the ignition and ran to the house yelling and pounding on the door. The defendant then forced Nikole to his car, and she saw him grab the bag on the floor she knew the gun was in from the night before. Nikole did not see the gun but saw clips with bullets in the bag. The defendant let Nikole go after her friend's husband yelled from the house. The defendant had told Nikole he was going to kill her and then himself.

"On March 20, 2010 at approximately 9:00 a.m. Deputy James Fletcher received a report from dispatch of a domestic disturbance in the city of Salina. Deputy Fletcher was sent to the defendant's residence to see if he was there. After arriving and locating the defendant's vehicle, he watched the residence from a block away while waiting for assistance to arrive. He then observed a subject jump out of the upstairs window onto the porch and leave in a green Ford Escort. The roads were icy and snow packed at that time. Deputy Fletcher followed the vehicle while waiting for assistance to arrive. Kansas Highway Troopers arrived and attempted to stop the defendant's vehicle. Trooper Alex Taylor had received a report that the defendant had gotten onto the roof displaying a gun and left in a green Ford Escort. The call was paged out with an alert tone that there was a suicidal subject with a 9 millimeter handgun. The officers had been told the defendant may take his life. The defendant refused to stop his vehicle and the pursuit ended when the defendant stopped at Emmanuel Christian Center in Salina. The defendant exited his vehicle with the gun in his right hand. The video recording of the chase and stop of the defendant's vehicle clearly shows defendant displayed a gun in his hand as he exited his vehicle and ran into the church. Troopers then followed the defendant into the church where he refused to surrender the gun. After defendant was instructed a number of times to hand over the gun, a trooper deployed a taser gun which had no effect. The defendant was then shot in the leg when he began to raise his gun. The defendant's gun was found to be loaded, and officers found another loaded magazine in defendant's coat pocket."

Dinneen was ultimately charged with 22 different counts which included robbery, 2 counts of kidnapping, criminal threat, domestic battery, aggravated assault on a law enforcement officer, 2 counts

of fleeing and eluding, and 14 traffic infractions resulting from the events which occurred on March 20, 2010.

After a preliminary hearing and plea negotiations, Dinneen pled guilty to attempted kidnapping in violation of K.S.A. 21-3420 and K.S.A. 21-3301, criminal threat in violation of K.S.A. 21-3419(a)(1), and fleeing and eluding a police officer in violation of K.S.A. 8-1568(b)(1). All the other charges were dismissed.

At the sentencing hearing, Dinneen's motion for dispositional departure was denied by the court. He was sentenced to 36 months' incarceration for the attempted kidnapping conviction, 6 months' incarceration for the criminal threat conviction, and 6 months' incarceration for the fleeing and eluding conviction. All the sentences were ordered to be served consecutively.

In a November 2010 registration hearing, after listening to counsels' arguments, the district court ruled that as defined by K.S.A. 2010 Supp. 22-4902(a)(7), Dinneen conducted the crimes of attempted kidnapping and criminal threat without the use of a deadly weapon but conducted the crime of fleeing and eluding with the use of a deadly weapon. As such, Dinneen was ordered to register as an "offender" under K.S.A. 22-4904 through 4907.

Dinneen filed a timely motion for reconsideration of the later ruling. He argued that in order for the district court to find that he used a firearm in the commission of fleeing and eluding, it must find that the firearm was an actual instrumentality of the crime and not merely in his possession at the time the crime was committed.

The motion to reconsider was argued in January 2011. The parties asked the court to review the preliminary hearing testimony, a 911 call from Dinneen's sister, and Trooper Taylor's video of the police chase.

The district court on April 19, 2011, issued its decision making the factual findings which we have previously set forth in their entirety and denied Dinneen's motion to reconsider. Dinneen has timely appealed.

## ISSUES PRESENTED AND ANALYSIS

As first stated, the precise issue on appeal is whether a deadly weapon was *used* in such a manner during the commission of the

crime of fleeing and eluding as to require Dinneen to register as an offender under the KORA.

The relevant statute is K.S.A. 2010 Supp. 22-4902(a)(7) which reads as follows:

"(a) 'offender' means:
(7) any person who . . . is convicted of any person felony and the court makes a finding on the record that a deadly weapon was *used* in the commission of such person felony." (Emphasis added.)

*Standards of review*

Interpretation of a statute is a question of law over which appellate courts have unlimited review. *State v. Dale*, 293 Kan. 660, 662, 267 P.3d 743 (2011). When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. Where there is no ambiguity, the court need not resort to statutory construction. *State v. Urban*, 291 Kan. 214, 216, 239 P.3d 837 (2010).

In a recent case involving the KORA, *State v. Coman*, 294 Kan. 84, 96, 273 P.3d 701 (2012), Justice Johnson opined:

"As a general rule, criminal statutes must be strictly construed in favor of the defendant. *State v. Paul*, 285 Kan. 658, 662, 175 P.3d 840 (2008). Any reasonable doubt as to the meaning of the statute is decided in favor of the accused, subject to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent. *State v. Jackson*, 291 Kan. 34, 40, 238 P.3d 246 (2010). See also *State v. Bonner*, 290 Kan. 290, 296, 227 P.3d 1 (2010) (stating that strict construction 'simply means that the court reads words with their ordinary meaning,' and then decides any reasonable doubt in favor of the accused)."

The *Coman* opinion went on to discuss the rule of lenity and stated:

"[T]he statutory interpretation favoring the accused cannot be unreasonable or nonsensical. In other words, there must be a *reasonable* doubt as to a criminal statute's meaning before the rule of lenity comes into play. . . . If, as here, there are two reasonable and sensible interpretations of a criminal statute, the rule of lenity requires the court to interpret its meaning in favor of the accused." 294 Kan. at 97.

For K.S.A. 2010 Supp. 22-4902(a)(7) to require offender registration, Dinneen must have (a) committed a person felony and during the commission of such felony he must have (b) used a

deadly weapon. We consider these two requirements in the order stated above.

*Over what time period did the commission of the felony of fleeing and eluding occur?*

When Dinneen pled guilty to the person felony of fleeing and eluding, he agreed he had violated the following statutory provisions:

"(a) Any driver of a motor vehicle who willfully fails or refuses to bring such driver's vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police vehicle or police bicycle, when given visual or audible signal to bring the vehicle to a stop, shall be guilty as provided by subsection (c)(1), (2) or (3).

. . . .

"(b) Any driver who violates the provisions of subsection (a) and who: (1) Commits any of the following during a police pursuit: (A) Fails to stop for a police road block; (B) drives around tire deflating devices placed by a police officer; (C) engages in reckless driving as defined by K.S.A. 8-1566 and amendments thereto; (D) is involved in any motor vehicle accident or intentionally causes damage to property; or (E) commits five or more moving violations; or

. . . .

"(c)(4) Every person convicted of violating subsection (b) shall be guilty of a severity level 9, person felony." K.S.A. 8-1568(a), (b) and (c)(4).

In discussing fleeing and eluding, our Supreme Court in *State v. Russell*, 229 Kan. 124, 126, 622 P.2d 658 (1981), said: "The gist of the proscribed conduct is a driver's failure to stop his motor vehicle after having been signaled by a police vehicle or attempting to elude a police vehicle." Fleeing and eluding "is merely a traffic violation." *Russell*, 229 Kan. at 127.

Once the violation of K.S.A. 8-1568 is established, the question then becomes, when did the commission of the crime of fleeing and eluding begin and when did it end?

There does not appear to be any Kansas caselaw directly on point. But, as we stated above, fleeing and eluding is a vehicular crime—a traffic violation. *Russell*, 229 Kan. at 127. The statute falls within chapter 8 which concerns "automobiles and other vehicles." Interpretation of 8-1568 in a previous case was so vehicle focused that in order for a defendant to be properly convicted of the crime, a uniformed law enforcement officer "must be occupying an ap-

propriately marked police vehicle or police bicycle when the visual or audible signal to stop is given to a motor vehicle driver." *State v. Beeney,* 34 Kan. App. 2d 77, 82, 114 P.3d 996 (2005).

Dinneen convincingly argues that once he was no longer driving his vehicle and when he exited his car, his "commission" of the crime of fleeing and eluding ceased because he was no longer committing any essential element of the crime. Thus, any involvement with a weapon prior to or after the driving stopped would not be relevant and could not be considered in resolving whether the gun was used in the commission of the fleeing and eluding person felony.

The State points to cases involving the mandatory sentencing statutes, K.S.A. 21-4704 and K.S.A. 21-4618 but does not offer any convincing argument to Dinneen's position that the crime of fleeing and eluding requires him to be inside a vehicle during its commission.

Therefore, the commission of the crime of fleeing and eluding began the moment Dinneen failed to stop his vehicle after being signaled to do so by Trooper Taylor and ended the instant he exited his vehicle in front of the Emmanuel Church. As such, for Dinneen to be required to register as an offender under K.S.A. 2010 Supp. 22-4902(a)(7), his use of a deadly weapon must have occurred during this time period.

*Did Dinneen use a deadly weapon during the commission of fleeing and eluding?*

With the timeframe within which the commission of the person felony of fleeing and eluding established, the ultimate and controlling question is reached. Did Dinneen *use* a deadly weapon at any time while in his vehicle during the police chase or prior to his leaving his vehicle at the Emmanuel Church?

Absolutely no evidence has been presented to show Dinneen touched, held, or in any manner manipulated the handgun while he was inside his vehicle. Trooper Taylor testified Dinneen exited his vehicle with the gun in his left hand and moved it to his right hand as he entered the church. The troopers did know Dinneen

was armed and suicidal, but that by itself, is not evidence of usage of a deadly weapon.

We have not located any Kansas cases which have directly determined how a deadly weapon must be *used* in the commission of a crime in order to rise to the level to be a violation of K.S.A. 2010 Supp. 22-4902(a)(7) sufficient to require registration under the KORA.

However, the definition of use of deadly weapons has been examined for purposes of other Kansas statutes. In *State v. George*, 20 Kan. App. 2d 648, 657, 891 P.2d 1118, *rev. denied* 257 Kan. 1094 (1995), the court examined an incident where the defendant used a pistol to strike the victim and found the use of a gun in an aggravated battery is not limited to firing it for purposes of the sentencing statute, K.S.A. 1993 Supp. 21-4704(h). The court held that as applied to the statute that mandated imprisonment for the use of firearms in the crime; the "concept of 'use' should be broadly construed" as to be consistent with the legislative intent in Kansas "to address public concern over the increased number of crimes involving firearms and with our Supreme Court's conclusion that enhancement of a sentence where a firearm is used is a legitimate effort to deter the use of a firearm." 20 Kan. App. 2d at 658 (citing *State v. Coley*, 236 Kan. 672, 674, 694 P.2d 479 [1985]).

In *State v. Smith*, 232 Kan. 284, 654 P.2d 929 (1982), the court held that the defendant's use of a rifle to push the victim off a balcony was sufficient to support an aggravated battery conviction. In *State v. DeCourcy*, 224 Kan. 278, Syl. ¶ 4, 580 P.2d 86 (1978), the court found that use for purposes of armed robbery meant that the firearm "was used as an instrument of force to overcome the will of the victim."

In the recent case of *State v. Nambo*, 42 Kan. App. 2d 731, 216 P.3d 186 (2009), *aff'd* 295 Kan. 1, 281 P.3d 525 (2012), an attempt was made to determine who was an offender under the K.S.A. 2010 Supp. 22-4902(a)(7) language by applying the definitions and holdings from the earlier sentencing statutes, K.S.A. 21-4618(a) (in effect from 1976 to July 1, 1993) and K.S.A. 21-4704(h). Nambo, an unarmed accomplice to an aggravated robbery where a carjacking was accomplished at gunpoint, asked our courts to apply an earlier

ruling that K.S.A. 21-4618(a) which denied probation, parole, or suspension of sentence to any defendant convicted of an article 34 crime in which *"the defendant used any firearm in the commission thereof"* only applied to the defendant personally armed with the firearm at the time the crime was committed. See *State v. Stuart and Jones*, 223 Kan. 600, 607, 575 P.2d 559 (1978).

The *Nambo* court disagreed, ruling the language in the sentencing statute was "active"—relating to the specific defendant that used the weapon—but, the K.S.A. 22-4902(a)(7) wording was "passive" and "focuses on the act itself (the use of the deadly weapon) without considering whether the actor personally used the weapon." *Nambo*, 295 Kan. at 4.

Nambo's final argument was a request to find the word "use" to be ambiguous and suggested it was inconsistent to construe use in the KORA different than use of a firearm in the sentencing statute. The *Nambo* court held the inquiry was not whether a firearm had been used to commit the offense as one had clearly been used. The *Nambo* opinion then cited *State v. George* as "(collecting cases and concluding that firearm use under K.S.A. 21-4618 includes brandishing, discharging, or using it as a club)" 295 Kan. at 7, but held the inquiry was whether Nambo had to personally use the firearm. The opinion concluded "[w]e have ruled 'no.' So an unarmed accomplice is required to register as an offender under K.S.A. 22-4902(a)(7)." 295 Kan. at 7.

The *Nambo* opinion focuses on who may be obligated to register as an offender under the KORA and discusses the differences between K.S.A. 22-4902(a)(7) and the sentencing statutes. But, *Nambo* does not resolve the use issue we face.

The unanimous United States Supreme Court decision in *Bailey v. United States*, 516 U.S. 137, 116 S. Ct. 501, 133 L. Ed. 2d 472 (1995) (superseded by statute as stated in *Abbott v. United States*, 562 U.S. 8, 131 S. Ct. 18, 178 L. Ed. 2d 348 [2010]), was argued below and on appeal by Dinneen as substantiating that use should be interpreted to require "active employment" of the deadly weapon before it can be considered to have been used as required by the applicable statute.

In *Bailey*, the petitioners had been convicted of a federal statute criminalizing the use or carrying of a firearm during a crime of drug trafficking; one petitioner was found by the district court to have violated the statute by virtue of having a loaded pistol inside his locked car trunk when he was arrested for possession of cocaine, while the other petitioner was found to have violated the statute when a loaded pistol was found inside a trunk located in her bedroom closet after she was arrested for drug-related offenses. After examining the history and language of the statute, the Court overturned the petitioners' convictions, holding that there must be an *"active employment* of the firearm by the defendant" in order for the statute to apply. 516 U.S. at 143.

To clarify its ruling, the *Bailey* Court illustrated activities that would fall within its active employment definition:

"The active-employment understanding of 'use' certainly includes brandishing, displaying, bartering, striking with, and, most obviously, firing or attempting to fire a firearm. We note that this reading compels the conclusion that even an offender's reference to a firearm in his possession could satisfy [the statute]. Thus, a reference to a firearm calculated to bring about a change in the circumstances of the predicate offense is a 'use,' just as the silent but obvious and forceful presence of a gun on a table can be a 'use.' " 516 U.S. at 148.

However, "[i]f the gun is not disclosed or mentioned by the offender, it is not actively employed, and it is not 'used.' " 516 U.S. at 149.

Dinneen argues that for him to be found to have violated K.S.A. 2010 Supp. 22-4902(a)(7), the officer's knowledge that Dinneen was armed and suicidal must rise to the level of use required by the statute. Dinneen contends that by simply possessing and carrying the weapon in his vehicle, he did not use the weapon to the necessary degree. Dinneen applies *Bailey*, arguing that the United States Supreme Court's active employment definition of use eliminates any possibility that he used the weapon while fleeing and eluding as no evidence was presented that the gun was anywhere but on the floor of his vehicle. 516 U.S. at 148. Dinneen concedes the State may have had a colorable argument had it prosecuted and convicted him with other crimes, such as obstructing a police officer, which would have covered the events that occurred after

he exited his vehicle, gun in hand. But instead, Dinneen states the State convicted him of fleeing and eluding, the commission of which ceased the moment he stepped out of his vehicle.

The State argues that *Bailey* is factually distinguishable from our case because while both the defendants in *Bailey* made no use or mention of their weapons at any time before their arrests, Dinneen threatened to kill his estranged girlfriend and had the gun and ammunition on the floor of the car at that time. The State reminds us that Dinneen was carrying the gun when he jumped out of the second story of his home and into his car, a fact the police were aware of when they instigated the pursuit. The State contends all the circumstances of Dinneen's actions are to be considered and it is critical that "[l]aw enforcement was aware the defendant had a gun and was ready to use it."

The problem with the State's argument is that incidents that happened prior to or after Dinneen's fleeing and eluding conviction are by definition, incidents that do not occur "in the commission" of the crime as the K.S.A. 2010 Supp. 22-4902(a)(7) language specifies. Regardless of the reason for the police chase, once the commission of fleeing and eluding began, Dinneen never actively employed, "referred" to, or otherwise utilized the gun to somehow change the circumstances of the chase. See *Bailey*, 516 U.S. at 148. For the State's argument to prevail, it would have to be shown that the law enforcement's awareness of a gun in Dinneen's vehicle during the chase is a use of the gun by Dinneen, but there simply is no caselaw to support it, and any reading of the statute as such, would "read into the statute something not readily found in it." *State v. Urban*, 291 Kan. 214, 216, 239 P.3d 837 (2010).

A common characteristic of several of the previous decisions, either examining K.S.A. 22-4902(a)(7) or defining use or using a weapon as it pertains to another statute, is the deliberate utilization (active employment) either directly, indirectly, or in some manner using a weapon that results in a change of circumstances of the crime being committed, such as facilitating commission of the offense. See *George*, 20 Kan. App. 2d at 657 (defendant used a pistol to strike victim); *Smith*, 232 Kan. at 284 (defendant used a rifle to push the victim off a balcony); *Nambo*, 295 Kan. 1, Syl. ¶ 2 (un-

armed accomplice required to register after principal utilizes a handgun in the commission of a crime).

We conclude that under the specific circumstances of this case, Dinneen did not actively employ or use a weapon in the commission of the person felony of fleeing and eluding. K.S.A. 2010 Supp. 22-4902(a)(7) was not violated, and Dinneen is not required to register under the KORA once he concludes his prison sentence.

The State has asserted on appeal a fallback argument that even if the district court erred in finding Dinneen used a deadly weapon in the commission of fleeing and eluding, the court's decision should be upheld as the correct result because the firearm was clearly used in the other offenses.

If a district court reaches the correct result, its decision may be upheld even though it relied upon the wrong ground or assigned erroneous reasons for its decision. See *State v. May*, 293 Kan. 858, 870, 269 P.3d 1260 (2012). However, there is a clear difference between an argument previously rejected by the district court and an alternate, unaddressed rationale for a district court's judgment. The previously rejected argument may not be briefed by a party as grounds to support a district court's decision for an alternative reason without a timely filed cross-appeal. *Cooke v. Gillespie*, 285 Kan. 748, 755-57, 176 P.3d 144 (2008).

The State contends here that the other crimes for which Dinneen was convicted—attempted kidnapping and criminal threat—plainly involved the use of a deadly weapon during their commission. As such, Dinneen should be required to register as an offender no matter the person felony to which the registration statute is applied.

But, in this case, at the registration hearing, the State argued in favor of applying K.S.A. 2010 Supp. 22-4902(a)(7) to all three convictions. The court rejected this argument and held it did not apply to either attempted kidnapping or criminal threat, but instead applied the registration statute and the KORA only to the crime of fleeing and eluding.

At the motion to reconsider hearing, the State again argued the registration statute should apply to all counts. This argument was

again rejected as the court's ruling was limited to denying Dinneen's motion to reconsider.

Since the State did not file a timely cross-appeal to the district court's April 19, 2011, decision, the argument may not now be made on appeal to support its contention that the district court achieved the right result for an alternative reason. *Cooke*, 285 Kan. at 755-57; see Oliver, *Education of Attorneys on Appeal and/or Cross Appeal*, 78 J.K.B.A. 20, 20-26 (March 2009).

Reversed and remanded to the district court with instructions to vacate the KORA registration order.